UNITED STATES of America,
Plaintiff–Appellee,

v.

John E. HAYES, Jr., Defendant–
Appellant.

No. 93–8144.

United States Court of Appeals,
Eleventh Circuit.

Dec. 20, 1994.

Lenny Franco, Alan Baverman, Atlanta, GA, for appellant.

Donald B. Mackay, John G. Moon, Ellen R. Meltzer, Central Station, U.S. Dept. of Justice, Crim. Div., Fraud Section, Washington,

DC, Amy Weil, Asst. U.S. Attys., N.D. Georgia, Atlanta, GA, for appellee.

Before BLACK and BARKETT, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

In this case we decide whether a delay of five years from the time of indictment to the time of trial violates Appellant John E. Hayes' right to a speedy trial and to due process of law. We also review the district court's exclusion of certain evidence on the grounds of attorney-client privilege. For the following reasons, we affirm Hayes' conviction.

## I. BACKGROUND

On March 9, 1987, a grand jury returned a four-count indictment against Hayes and co-defendant Frederick G. Thom. The indictment charged the defendants with participating in a purported tax shelter scheme to defraud hundreds of investors in the United States through grantor trusts and fictitious commodities transactions involving precious metals on foreign markets.[1] On February 9, 1988, a superseding indictment was filed against Hayes and Thom, which added several defendants to the case and also charged Hayes with threatening a witness and obstructing a grand jury investigation.[2]

Each time the indictments were returned, upon motion of the Government, the district court ordered that they be placed under seal to facilitate Thom's apprehension. Thom was a foreign national residing in Zimbabwe at the time. The court ordered the Government to file a status report at least every 90 days detailing its efforts to secure Thom's arrest and extradition.

The Government's efforts were unsuccessful, and on January 16, 1992, the district

court granted its motion to unseal the superseding indictment. Hayes was arraigned on February 5, 1992. On March 10, 1992, he requested that his case be certified as complex litigation pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii), and waived his rights under the Speedy Trial Act "in the interest of allowing [Hayes] time to adequately prepare a defense." His motion was granted on March 11, 1992. On September 17, 1992, the district court excluded the period between June 1 and November 2, 1992, in computing the time within which the trial had to commence.[3]

## II. STANDARD OF REVIEW

Since the issue was not raised before the district court, we review the alleged violation of Hayes' right to due process of law and a speedy trial for plain error. *United States v. Olano,* — U.S. —, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We review the trial court's evidentiary ruling for abuse of discretion.

## III. DISCUSSION

### A. *Due Process of Law and Speedy Trial*

Hayes can succeed on claims initially raised here only if he can show that there was error, that the error was plain, and that it affected his substantial rights, i.e., the error affected the outcome of the district court proceedings. *Olano,* — U.S. at — —, 113 S.Ct. at 1777–78; *see also* Fed. R.Crim.P. 52(b). We do not correct a forfeited error unless it " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). Plain error is reversed only in the case "in which a miscarriage of justice would otherwise result."

---

1. The defendants were charged with wire fraud, in violation of 18 U.S.C. § 1343; interstate transportation of money taken by fraud, in violation of 18 U.S.C. § 231; and conspiracy to commit the substantive offenses, in violation of 18 U.S.C. § 371.

2. Hayes was charged with violations of 18 U.S.C. § 1513 and § 1503.

3. At the time of Hayes' trial, Thom was still a fugitive. On June 9, 1993, Thom was arrested in the United Kingdom. The government filed an extradition request on August 2, 1993.

*United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982).

■ 1. *Due Process of Law.* Hayes claims he was denied due process of law by the Government's undue delay in indicting him. He testified before the grand jury in December 1984 and was told he was a target, but the first indictment was not filed until March 1987, five years after the offenses for which he was convicted.

■ To establish a due process violation based on preindictment delay, a defendant must show that the reason for the delay "violates our fundamental conceptions of justice." *United States v. Lovasco,* 431 U.S. 783, 790–91, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977); *see also United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). In this circuit, the defendant must show that he suffered substantial prejudice and that the delay was the product of deliberate action by the Government to gain a tactical advantage. *United States v. Young,* 906 F.2d 615, 620 (11th Cir.1990); *see also United States v. Benson,* 846 F.2d 1338, 1341 (11th Cir.1988); *Stoner v. Graddick,* 751 F.2d 1535, 1543 (11th Cir. 1985).

■ Hayes does not allege that the Government intentionally delayed the indictment against him in order to gain a tactical advantage. There is also no evidence in the record that it did so. On the contrary, it is undisputed that the investigation was ongoing during the three years after Hayes testified before the first grand jury. Hayes admits that he was offered an opportunity to testify before a successor grand jury in 1987, and was told that the scope of the investigation had expanded. There is no due process violation where delay is the result of the need for further investigation, even if the defendant may have been somewhat prejudiced by the lapse of time. *Lovasco,* 431 U.S. at 794–96, 97 S.Ct. at 2051–52; *see also Benson,* 846 F.2d at 1342–43 (no violation even though eight-year investigative delay prejudiced defendant); *Stoner,* 751 F.2d at 1543 (nineteen-year delay presumed proper absent any evidence that state delayed for purpose of

harassment). Hayes' right to due process of law was not violated.

■ 2. *Speedy Trial.* The five-year delay between the indictment and the trial is more troublesome. The Supreme Court has set out a four-part test for determining whether the delay between the initiation of criminal proceedings and the beginning of trial violates a defendant's right to a speedy trial. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The test requires the court to consider the length of the delay, the cause of the delay, the defendant's assertion of his right to a speedy trial, and the presence or absence of prejudice resulting from the delay. *Id.* at 530–33, 92 S.Ct. at 2192–93.

a. *Length of the delay.* The delay in this case of five years is sufficient to trigger a careful review of the other three *Barker* factors required to establish a violation of the right to speedy trial.

■ b. *Cause of the delay.* The Government has a duty to make a diligent, good faith effort to bring an indicted defendant to trial promptly. *Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 579–80, 21 L.Ed.2d 607 (1969). Nevertheless, an allegation of unconstitutional delay must be evaluated by the facts of each particular case. *United States v. Marion,* 404 U.S. at 325, 92 S.Ct. at 466.

The Government's reason for sealing the indictment and delaying trial against Hayes was a valid one. The Government was attempting to apprehend Hayes' co-defendant, Thom, who was living in Zimbabwe. The indictment was sealed because the Government feared that Thom would frustrate its attempts to secure his arrest and deportation if he were aware of it.

During the subsequent five years, the Government exercised diligence in attempting to persuade the Government of Zimbabwe to arrest and deport Thom. In January of 1992, having determined that its efforts would not be successful (although we note that the Government ultimately did secure his arrest in and deportation from England), the Government moved to unseal the indictment and proceeded to trial against Hayes.

This is not a case where the Government made no efforts to prosecute the defendant during the delay. *Cf. Doggett v. United States,* —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). On the contrary, during the period of delay, the Government made persistent and documented efforts to prosecute Thom. Between June 1987 and November 29, 1991, the Government filed seventeen reports describing, *inter alia,* its efforts to have the United Kingdom intercede on behalf of the United States; repeated requests to Zimbabwe through the American Embassy and the U.K. to effect Thom's arrest and extradition or deportation; the filing of notices on Interpol's computer system; inquiries to the Zimbabwean Embassy concerning Thom's whereabouts; discussions between the U.K. and the United States concerning a request for extradition if Thom were deported to Britain; the filing of a provisional arrest warrant in the U.K.; and attempts by the United States to locate Thom in several other foreign countries.

Even though these efforts caused a lengthy delay in prosecuting Hayes, the Government's persistence in trying to locate Thom was not unreasonable. There always appeared a reasonable expectation of success in obtaining jurisdiction over Thom, and the Government was diligent in its efforts to do so. Under these circumstances, the delay in prosecuting Hayes will not be held against the Government. *See United States v. Tranakos,* 911 F.2d 1422, 1428 (10th Cir.1990).

**c. Demand for speedy trial.** A defendant has the "responsibility to assert a speedy trial claim." *Barker,* 407 U.S. at 529, 92 S.Ct. at 2191. The "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193. Hayes concedes that at trial he neither challenged the post-indictment delay by filing a motion to dismiss the indictment, nor made a demand for a speedy trial at that time. In fact, Hayes successfully moved to have the district court declare his case complex, further delaying his trial. These actions undercut Hayes' claim of error of constitutional magnitude, and militate against a finding that the delay was plain error.

**d. Prejudice to the defendant.** In cases involving lengthy delay, prejudice may be presumed. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2693. Where the Government has pursued its prosecution with reasonable diligence, however, specific prejudice must still be shown. *Id.* This is especially true where the delay is reviewed only for plain error. *Olano,* —— U.S. at ——, 113 S.Ct. at 1778. Hayes argues that one witness was unable to recall certain events in her trial testimony. Beyond this, he asserts only a vague allegation that he was prejudiced by the "erosion of exculpatory evidence and testimony."

Such conclusory allegations do not establish the required showing of prejudice to prevail under the plain error standard. This court has consistently held that conclusory assertions of prejudice, including unsubstantiated allegations of witnesses' faded memories, are insufficient to constitute proof of actual prejudice. *See e.g., Young,* 906 F.2d at 620; *United States v. Russo,* 796 F.2d 1443, 1451 (11th Cir.1986).

We conclude that Hayes' right to a speedy trial was not violated.

## B. *The Evidentiary Rulings*

Hayes' defense rested in large part upon his claim that he had acted in good faith reliance on Thom's representations that their business venture was entirely legitimate. Hayes wanted to argue to the jury that he also was a victim of Thom's fraudulent scheme.

To this end, Hayes sought to introduce the testimony of the tax attorney he had hired to represent the grantor trusts. Hayes wanted the attorney to tell the jury how he had tried to contact Thom on numerous occasions to secure documentation from him regarding the commodities transactions and other aspects of the investment scheme.

The Government persuaded the district judge to exclude this testimony on the grounds that it would violate the attorney-client privilege of the hundreds of other investors in the grantor trusts who were also represented by the attorney. Hayes claims

this application of the privilege was error. It is apparent that this testimony, if believed, would have provided some support for his defense of good faith reliance on Thom.

As is not unusual when counsel have persuaded a trial judge to err—asserting, of course, that a contrary ruling would have been devastating—the Government now agrees that it counseled the judge to err, but argues that the error was really harmless and did not prejudice Hayes' ability to present his defense. We look at such a series of events with something less than enthusiasm.

Even though application of the attorney-client privilege was erroneous here, and the evidence sought was probative, subsequent events in the trial persuade us that the error was, in fact, harmless. Substantially all of the testimony that the court initially excluded was later admitted through the tax lawyer. Ultimately the attorney was permitted to testify that he attempted to contact Thom to obtain proof that the gold transactions occurred. On numerous occasions, he tried to make arrangements through Thom's lawyers in Switzerland and Zimbabwe to make Thom available for consultation. Thom failed to show up at scheduled meetings on thirty to forty occasions. He was never successful in persuading Thom to meet with him in the United States, or to secure Thom's testimony overseas. Finally, he retained another law firm to research whether Thom could be forced to provide documents and testimony. In the end, he did receive a large box of documents from Thom.

Another of Hayes' attorneys testified that he wrote letters, telephoned and sent telexes in an attempt to obtain documents sought by the IRS, and that he ultimately received 292 such documents. Substantial correspondence from that attorney's files was also admitted. Hayes, himself, testified that he employed these attorneys to secure documents from Thom, and to their efforts in doing so.

The only evidence which remained excluded—regarding the contents of the eleven letters that Hayes received from Thom, and Hayes' demeanor throughout the attorneys' representation of him—was properly excluded on grounds other than attorney-client privilege.

There was substantial evidence in the record to support Hayes' defense that he acted in good faith, and that he attempted to contact Thom to assure himself that Thom was also acting in good faith. For that reason, Hayes was entitled to and did make this argument to the jury. Subsequently, Hayes requested and the court gave a good faith instruction. The jury's failure to credit that theory of defense does not reflect a failure to hear it.

We conclude that Hayes was able to present his defense theory and was not prejudiced by the court's incorrect evidentiary ruling.

Finding no merit in any of the other allegations of reversible error, we AFFIRM.