**UNITED STATES of America, Plaintiff,**

v.

**Augusto Guillermo FALCON, Defendant.**

No. 88–327–CR.

United States District Court,
S.D. Florida.

April 19, 1996.

Michael Patrick Sullivan, Christopher Clark, Asst. U.S. Attys., Miami, FL, for Plaintiff.

Albert J. Krieger, L. Mark Dachs, Miami, FL (Scott A. Srebnick, of counsel), Miami, FL, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT

MARCUS, District Judge.

THIS CAUSE comes before the Court upon the Defendant's Motion to Dismiss Indictment for Violation of Sixth Amendment Right to Speedy Trial, filed March 12, 1996. After a thorough review of the record and pleadings, and having taken testimony and considered the argument of counsel, the Defendant's motion to dismiss must be and is DENIED.

#### I.

There is no meaningful dispute concerning the essential facts at issue in this motion. On May 12, 1988, a federal grand jury in the Southern District of Florida returned a six-count indictment, charging the Defendant with making a false statement on an application for the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) (Counts I, III and V), and receipt of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(h)(1) and 924(a) (Counts II, IV and VI). These charges relate to conduct alleged to have taken place in 1983 and 1984. A warrant for the Defendant's arrest was issued in conjunction with the return of the indictment.

Between 1988 and October of 1991, the Defendant was a fugitive from justice on these firearms charges, as well as a drug trafficking conviction in the Dade Circuit Court and a separate drug trafficking charge before a California state court.[1] While Falcon was a fugitive, on July 19, 1990, a federal grand jury in the Middle District of Florida returned a superseding indictment charging Falcon with participation in a money laundering conspiracy (the "Jacksonville case").[2] Ten months later, on April 10, 1991, a federal grand jury in this District returned an indictment charging the Defendant, among others, with multiple narcotics offenses (the "drug case"). Arrest warrants for these federal charges were issued in conjunction with the return of the indictments.

On October 15, 1991, a joint task force of federal and state agents under the direction of the United States Marshals Service located the Defendant in Fort Lauderdale, where he was residing under an assumed name. At the time of his apprehension, the Defendant was wanted on the federal charges documented above, as well as the separate non-federal narcotics cases in Florida and California. On October 16, 1991, members of the Warrants section of the Miami office of the Marshals Service executed the arrest warrant for the drug case and took Falcon into detention. The warrant for the gun charge was not executed at that time.

According to James Tassone, Chief Deputy United States Marshal for the Southern District of Florida, the Marshals Service arrested Falcon on the drug charge alone due to a "memorandum of understanding" between the Service and the United States Drug Enforcement Administration ("DEA"), which gave the United States Marshal primary responsibility for the execution of outstanding arrest warrants on DEA fugitives. Tassone testified that, in compliance with office policy, the additional federal arrest warrants were

1. Falcon was convicted of drug trafficking before the Dade Circuit Court in December, 1979 after he entered a plea of nolo contendere. He was ordered to report to begin service of a 14-month term of imprisonment in early 1988, but failed to appear. The California drug trafficking charges were initiated in 1985, but Falcon failed to appear for a probable cause hearing in the Los Angeles County Superior Court. *See Gov't. Resp. to Def.Mot. for Revocation of Pretrial Detention Order*, March 25, 1996, at ¶¶ 1–4.

2. On April 16, 1996, the Government moved to dismiss this indictment. *See* Defendant's Second Supplemental Memorandum in Support of Admission to Bail, April 18, 1996.

filed as informal "detainers" to be executed, if appropriate, at the conclusion of the drug case. Tassone acknowledged that the Marshals Service could have arrested Falcon on the gun charges. He emphasized, however, that the Marshals Service did not have a memorandum of understanding with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), which typically took responsibility for the execution of arrest warrants on fugitives wanted for firearms offenses.

Tassone explained that it was the Marshals Service that brought about the arraignment of Falcon on the drug charges. This arraignment took place before United States Magistrate Judge Ted E. Bandstra on October 16, 1991. The case was then assigned to United States District Judge Federico A. Moreno. Thereafter, the Defendant moved for a trial continuance until November of 1992, again for a continuance of trial from October 19, 1992 until April 19, 1993 and still again (on December 11, 1992) sought a continuance of the April 1993 setting, all of which the Court granted. *See* Gov't.Resp. at 4 and exh. B, C. On September 29, 1993, the Defendant again moved to continue the drug trial. *Id.* at exh. G. Judge Moreno denied the application, but, on September 30, 1993, granted a defense motion to suppress evidence, prompting an interlocutory appeal by the Government and resulting in an extensive delay of the trial proceedings while the matter was pending before the Court of Appeals. The Eleventh Circuit issued its Order on the interlocutory appeal on February 21, 1995, at which time the district court set the drug case for trial on October 16, 1995. Thereafter the Defendant sought still another continuance. *Id.* at 6. After more than four months of trial, a jury acquitted the Defendant of all charges on February 16, 1996. On the next business day (February 20, 1996) the Marshals Service executed the outstanding arrest warrant for the gun charge along with a separate arrest warrant for the Jacksonville money laundering case. Falcon was arraigned on the firearms charge on February 20, 1996, and thereafter the case was reassigned to this Court.

The Defendant now has moved to dismiss the indictment in this case, alleging that the Government's delay in executing the arrest warrant and arraigning him on the gun charges violated the Sixth Amendment's guarantee of a speedy trial.[3] According to Falcon, the four and one-half year delay between his arrest on the drug charges and his arrest on the instant charges was the fault of the Government, which had the Defendant in pre-trial detention and easily could have—but did not—arrest or arraign him. The United States filed its response on March 29, 1996, asserting that the Defendant's argument is undermined by his failure to invoke his speedy trial rights, and the fact that he has not been prejudiced as a result of the delay. The Defendant replied on April 1, 1996, and this Court took evidence and argument on the motion at a status conference on April 2, 1996.

## II.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. A Defendant's speedy trial rights are triggered by an arrest or the return of an indictment. *See United States v. MacDonald,* 456 U.S. 1, 6–7, 102 S.Ct. 1497, 1500–02, 71 L.Ed.2d 696 (1982). The parties agree that the question of whether the Government's delay in proceeding against Falcon on the gun charges violated the Constitution is guided by the United States Supreme Court's opinion in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The *Barker* court identified four factors that are pertinent to this issue: (1) the length of the delay; (2) the reason for the delay; (3) the Defendant's assertion of his speedy trial rights; and (4) the amount of prejudice suffered by the Defendant as a result of the delay. 407 U.S. at 530–32, 92 S.Ct. at 2191–93. As the Eleventh Circuit has observed, no single factor is dispositive. Rather, the *Barker* test requires a balancing of interests in light of the specific facts of the case at bar. *See United States v.*

---

**3.** The Defendant's argument is premised on constitutional grounds, rather than the provisions of the Speedy Trial Act, 18 U.S.C. § 3161.

*Davenport,* 935 F.2d 1223, 1239 (11th Cir. 1991).

## A.

■ The first factor concerns the length of the delay. Falcon was indicted on the gun charges on May 12, 1988. He was not arrested on these charges until February 20, 1996 and trial is set to begin during the week of May 6, 1996. The Defendant has conceded, however, that due to Falcon's fugitive status, the Government's obligation to execute the warrant of arrest or arraign him on the gun charges did not commence until October 16, 1991, the date he was apprehended on the drug charges.

■ In *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Supreme Court recognized that this first element of the *Barker* test is in fact a two-part inquiry. First, the Defendant must establish that the interval between the indictment and trial is presumptively prejudicial. If so, the court must consider, as one factor among several, the extent to which the delay stretched beyond the bare minimum needed to trigger judicial scrutiny. *Id.* at 650–53, 112 S.Ct. at 2690–91. In this case, the Government concedes that "the length of the delay is great and satisfies the presumptively prejudicial standard." Gov't.Resp. at 8. Moreover, we find that the over fifty-four month lapse between Falcon's apprehension and the anticipated trial of this case weighs in favor of dismissal.

## B.

The second *Barker* factor concerns the reasons for the delay. In *Barker* itself, the Supreme Court explained that "different weights should be assigned to different reasons"—

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defen-

dant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531, 92 S.Ct. at 2192; *see also United States v. Carter,* 603 F.2d 1204, 1207 (5th Cir.1979) (noting that "[t]hough a purposeful attempt to delay the trial to prejudice the defendant or to gain a tactical advantage for itself should weigh heavily against the Government, a more neutral reason ... does not necessarily tip the scale in favor of the defendant").[4]

The Defendant contends that the United States alone is responsible for the delay in bringing this case to trial. According to the Defendant, the Government could have executed the arrest warrant and arraigned Falcon at any point during his pre-trial detention on the drug charges, notwithstanding its knowledge of the internal operating procedure of the Marshals Service. The Defendant also suggests that the Government postponed proceedings in this case for an improper motive: its desire to keep the gun charges available for use in plea negotiations or for future prosecution if a jury acquitted Falcon of the drug charges.

The United States acknowledges that it had the power to have Falcon arraigned and brought to trial on the gun charges, notwithstanding the Marshals Service's custom of holding unexecuted warrants in abeyance until the resolution of the specific charges on which the Defendant was arrested. The Government maintains, however, that the delay was attributable to a deliberate, but good faith, decision to focus attention on the more difficult and time-consuming drug case before Judge Moreno, as well as a number of neutral factors that slowed the progress of the proceedings in that litigation. In other words, the Government insists that it did not wilfully postpone its prosecution of the gun charges for the purpose of obtaining an impermissible tactical advantage in the event that Falcon avoided a conviction on the drug charges.

On this record, the evidence does not establish that the Government's failure to ar-

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

raign Falcon for his alleged firearms offenses was motivated by a desire to obtain improper tactical advantage over the Defendant. The drug case before Judge Moreno involved several Defendants in addition to Falcon, and the indictment concerned acts that took place over a lengthy period of time and turned on the testimony of a large number of witnesses. A total of twenty four narcotics offenses were charged, seventeen of which eventually went to the jury, and one of which—the alleged continuing criminal enterprise ("CCE") violation—carried a possible life sentence. The trial itself lasted over four months. Counsel for the Government represented at oral argument that, as the Government saw it, if a favorable verdict could be obtained in the drug case, the verdict and ensuing life sentence would be "dispositive" of the gun charges. Due to the seriousness of the possible penalties, the complex nature of the proof and the difficulty of legal questions concerning severance and the admissibility of evidence in the drug case, it is reasonable to assume that the Government's energies (like those of Falcon and his counsel) were concentrated on that litigation rather than the more straightforward and less serious gun charges. Indeed, it is at least arguable that the United States would have obtained more of a tactical advantage if it had tried Falcon on the gun charges before trying him on the drug charges, in the sense that a conviction in the gun case may have been used for impeachment or to enhance any sentence imposed as a result of the drug offenses. At all events, there is no evidence that the Government wilfully used the gun charge as a "sword" in its dealings with Falcon. Nor can we divine any tactical advantage the Government could have hoped to obtain by its decision to proceed first with the drug case.

The Government also explains that it cannot be faulted for the slow progress of the drug case. We agree. The Government's decision to take a (successful) interlocutory appeal to the United States Court of Appeals for the Eleventh Circuit from the district court's suppression order does not support the proposition that the United States acted in bad faith in postponing its prosecution of this action. Moreover, the Defendant himself must accept much of the responsibility for the halting pace of the drug case, in light

of his frequent motions for continuance. *See* Gov't.Resp., at exh. B, C, G.

In short, we agree that this factor weighs in favor of Falcon, although not to the extent that the Defendant would have us accept. The delay was not the product of carelessness on the part of law enforcement officials. Rather, it was the result of a reasonable decision (supported by the tacit agreement of all of the parties involved) to focus attention on the far more complex and serious drug proceeding. While we recognize that, as the Defendant sees it, the instigation of the instant prosecution was vindictive, there is no evidence in the record to support Falcon's assertion that the Government used or intended to use these gun charges for constitutionally suspect ends. Thus, while the Government's lack of bad faith does not preclude dismissal of the indictment, it is a consideration that affects our analysis of the delay.

### C.

■ The third *Barker* factor concerns the Defendant's efforts to invoke his speedy trial rights. The Supreme Court and the Eleventh Circuit have recognized that a defendant has the "responsibility to assert a speedy trial claim" and that "the failure to assert the right will make it difficult for a Defendant to prove that he was denied a fair trial." *United States v. Hayes*, 40 F.3d 362, 366 (11th Cir.1994) (quoting *Barker*, 407 U.S. at 529, 532, 92 S.Ct. at 2191, 2193), *cert. denied*, —— U.S. ——, 116 S.Ct. 62, 133 L.Ed.2d 24 (1995); *see also Doggett*, 505 U.S. at 652–54, 112 S.Ct. at 2691 (indicating that if the defendant had been aware of the indictment years before he was arrested, this fact "would be weighed heavily against him"). There is no dispute that Falcon and his counsel never attempted to invoke his speedy trial rights, or otherwise bring the gun charge to the attention of prosecutors or a court.

A threshold question concerns Falcon's awareness of the charges in the indictment. In his motion, Falcon suggests that he was not aware of the gun charges. *See* Def.Mot. to Dismiss, at 12 (explaining that Falcon "was never notified of the charges against him"). At oral argument, however, Defen-

dant's counsel acknowledged that he believed Falcon was aware of the pending indictment on the gun charges. Moreover, the Government introduced *in camera* a copy of a letter, dated September 11, 1992, that outlined a proposed plea agreement in the case before Judge Moreno that referred to the indictment before this Court. *See* Gov't. Resp., at exh. J. When asked about this letter, Defendant's counsel stated that he would have to accept that Falcon knew about the gun charges no later than September of 1992. Indeed, the Government suggests that Falcon may have known about the indictment as early as November of 1988, when his counsel at the time met with an ATF agent and an assistant United States Attorney and others to discuss the status of the various charges against Falcon. *See id.*, at exh. A. At all events, the evidence plainly establishes that the parties discussed the gun charges during occasional plea negotiations over an extended time frame beginning as early as the Spring of 1992 and continuing until the Fall of 1995, when the trial of the drug case began.

Falcon's failure to invoke his speedy trial rights in this proceeding is all the more telling in light of his behavior with regard to the charges pending against him in other jurisdictions. For example, on June 4, 1993 and again on February 10, 1994, Falcon filed a petition for writ of habeas corpus ad prosequendum in the Jacksonville money laundering case. *See id.* at exh. D, H. In the petition, the Defendant sought an arraignment and the issuance of a writ so that his case might proceed to trial. The applications were denied by a court in the Middle District of Florida. *Id.* at exh. E, F, I. In a letter that pre-dated the first motion, Defendant's counsel wrote to the assistant United States Attorney supervising the Jacksonville prosecution in an effort to clarify his client's status:

> I represent Augusto Falcon in United States v. Falcon, et al., Case No. 91–6060–Cr–Moreno, in the United States District Court for the Southern District of Florida. I understand that there is a case, No. 89–98(S2)–Cr–J–16, pending against Mr. Falcon ... in the Middle District of Florida. Mr. Falcon [has] not been arraigned in that case.... If it is your intention to proceed to trial in the matter pending in

your division, we would appreciate being so advised and meeting with you to discuss scheduling and other related matters. If it is not your intention to proceed, then we would still like to talk with you concerning dismissal of this matter. It should not remain endlessly in a state of limbo.

*Id.* at exh. D (letter of March 9, 1993). In April of 1995, the Defendant filed another petition for a writ of habeas corpus ad prosequendum with the California court overseeing narcotics charges pending against him in Los Angeles. The state prosecutor responded to this motion by dismissing all of the outstanding charges. This evidence establishes that Falcon, through his counsel, had the wherewithal to bring the gun charges to a boil. The uncontroverted and unexplained fact that he chose not to suggests that, either pursuant to an implicit agreement with Government counsel or for his own sound tactical reasons, Falcon was just as willing as the United States to let the gun charge linger for the duration of the drug prosecution before the district court.

Falcon rightly insists that a defendant does not forego his Sixth Amendment right to speedy trial by failing to seek his own arrest and prosecution. *See Barker,* 407 U.S. at 527, 92 S.Ct. at 2190 (noting that "a defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process"). For this reason, we do not agree with the Government's apparent suggestion that Falcon's failure to invoke his rights is in and of itself fatal to this motion. Nevertheless, while we recognize that a defendant is not obliged to call himself to trial, Falcon's failure to do so not only weighs against dismissal of this indictment, but underscores the Government's argument that its delay, while deliberate, was not motivated by a desire to obtain improper tactical advantage, and suited the interests of the Defendant (as well as the United States) in resolving the more complex and serious drug case prior to proceeding on the firearms charges.

### D.

The final *Barker* factor concerns prejudice. In *Doggett,* the Supreme Court held that the extent to which a Defendant must show actu-

al prejudice depends on whether it is he or the Government who is responsible for the delay. To demonstrate this rule, the Court described three situations and explained that the defendant must show a different level of prejudice under each. Where the Government proceeds with "reasonable diligence," the "speedy trial claim would fail ... as a matter of course however great the delay, so long as [the defendant] could not show specific prejudice to his defense." 505 U.S. at 656, 112 S.Ct. at 2693. Where "the Government ... intentionally [holds] back in its prosecution of him to gain some impermissible advantage at trial, [such] official bad faith in causing delay will be weighed heavily against the Government and [a lengthy] delay would present an overwhelming case for dismissal." *Id.* (citations omitted). Where the Government is negligent in pursuing a defendant, prejudice will be presumed and its weight in the defendant's favor will depend on the length of the delay. *Id.* Thus, the amount of prejudice, if any, that must be shown by the Defendant turns on the mix of the first three *Barker* factors.

The facts of this case do not fit squarely into any of the situations discussed in *Doggett.* While the length of the delay has been substantial, we conclude that both the Government and the Defendant essentially acquiesced to postponing the gun charges until resolution of the more serious and complex drug case. *Doggett* itself acknowledged that the presumption of prejudice might be inappropriate where the defendant knowingly declines to assert his speedy trial rights. *Id.* at 658, 112 S.Ct. at 2694 (noting that the Defendant is entitled to relief when the Government is responsible for the delay "and when the presumption of prejudice is [not] extenuated ... by the defendant's acquiescence"). This language is consistent with the holding in other cases that prejudice should be conclusively presumed only where the other *Barker* factors weigh heavily against the Government. *See, e.g., Ringstaff v. Howard,* 885 F.2d 1542, 1543 (11th Cir.1989) (explaining that "[t]he defendant does not have to show actual prejudice by delay ... if the first

three *Doggett* factors weigh heavily against the Government"), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990); *United States v. Dennard,* 722 F.2d 1510, 1513 (11th Cir.1984) (same). As discussed above, on the facts of this case, the third factor—whether the Defendant could have, but did not, invoke his speedy trial rights—weighs heavily in favor of the Government rather than the Defendant. Thus, in order to succeed on his speedy trial argument, Falcon must make at least some showing of actual prejudice attributable to the 54-month delay in bringing this case to trial. *See United States v. Aguirre,* 994 F.2d 1454 (9th Cir.1993) (noting that the "Aguirre's acquiescence in the delay, despite his knowledge of the outstanding indictment, is ... a reason to place the burden of proving prejudice on him"), *cert. denied,* 510 U.S. 1029, 114 S.Ct. 645, 126 L.Ed.2d 603 (1995).

■ In order to show actual prejudice, it is not enough for a defendant to rest on unsupported allegations of diminished memories or lost evidence. *See Hayes,* 40 F.3d at 366; *United States v. Young,* 906 F.2d 615, 620 (11th Cir.1990). Moreover, it is not enough for a defendant to focus on prejudice from the prosecution or the possible consequences of the prosecution, as opposed to prejudice from the allegedly unconstitutional delay. Thus, Falcon's insistence that, as a result of this indictment, he has been kept in pre-trial detention and faces additional jail time is not persuasive in this context.

Falcon argues that his ability to put on an effective defense has been undermined as a result of the Government's delay in bringing this case to trial, because Ralph Edwards— the licensed firearm dealer who sold Falcon the firearms identified in the indictment— died in 1995. Falcon contends that Edwards would have been the "principal witness" for the defense. He fails to articulate, however, how, if at all, Edwards might have been able to exculpate the Defendant. Indeed, it is at least as probable that Edwards would have implicated the Defendant in the illegal firearm transactions.[5]

5. At oral argument, Defendant's counsel referred to a letter sent to him by one of the Government's counsel that referred to a statement given by Edwards before his death. When questioned about this statement, however, counsel for the

Government explained that the purpose of the letter was to put the Defendant on notice that the United States *might* attempt to introduce Edwards' statement under the catch-all exception to

In addition, the Government insists that the case against Falcon will turn on the presentation of records, rather than fact witnesses like Edwards. At oral argument, counsel for the Government explained that the United States will focus its presentation on ten documents obtained from Edwards' gun shop relevant to offenses charged in the indictment. These documents include three ATF forms, a receipt for a firearm purchase allegedly made by Falcon on January 9, 1984, and six Dade County firearm purchase forms. The Government contends that it would have sought to authenticate these records through Edwards. In this sense, of course, Edwards' absence makes it far more, rather than less, difficult for the United States to admit the records and prove its case against Falcon.[6] The Defendant does not suggest that documents or records relevant to this prosecution have been lost or damaged during the period between Falcon's apprehension in October of 1991 and the date of this Order. Moreover, the Government conceded at oral argument that it would not contest any effort to credit the time Falcon has served on pre-trial detention against any sentence he might receive in the case at bar. It follows, therefore, that Falcon is unable to make a showing of actual prejudice from the delay in bringing this case to trial. The final *Barker* factor thus weighs in favor of· the United States.

To summarize, the length of the delay weighs in favor of the Defendant. Moreover, while there is no evidence to suggest that the Government acted in bad faith or for unfair tactical advantage, the United States undoubtedly had the ability to formally arrest and arraign Falcon on the charges contained in this indictment. Nevertheless, the Defendant's knowing failure to invoke his speedy trial rights, coupled with the absence of prejudice from the delay, weighs substantially against dismissal of the prosecution. Under these facts and circumstances, Falcon has failed to establish that permitting this case to proceed to trial will violate the Sixth Amendment.

In support of a different conclusion, the Defendant places a great deal of emphasis on a decision from another court in this district. In *United States v. Donohue*, 1994 WL 904692, 1994 U.S.Dist. LEXIS 20036 (Dec. 7, 1994), the court adopted the Magistrate Judge's report and recommendation and dismissed an indictment on speedy trial grounds. At the outset, we reiterate that our analysis of the *Barker* factors is highly fact-dependent, and must be done on a case-by-case basis. That being said, *Donohue* is distinguishable on the merits. In that case, the Magistrate Judge found that the Government was negligent in failing to locate and arrest the defendant during the 44 months after his indictment, even though it could have done so with ease. Of paramount importance, however, the Magistrate Judge also found that, although the defendant did not assert his speedy trial rights, he did not know about the outstanding charges against him. In the case at bar, Falcon unquestionably knew about the pendency of the gun charges, but made a tactical decision to acquiesce in the Government's decision to hold them in abeyance. Thus, *Donohue* does not require dismissal of the May 12, 1988 indictment.

It is therefore

ORDERED AND ADJUDGED that the Defendant's Motion to Dismiss is DENIED.

DONE AND ORDERED.

---

the hearsay rule. *See* Fed.R.Evid. 803(24). Defendants' counsel stated that he will contest the admission of this statement.

**6.** When questioned at oral argument, counsel for the Government explained that, due to Edwards' absence, it will seek to admit the ATF forms as "business records" that were within the custody and control of the Bureau, even though they were kept in the gun shop. Counsel added that it will attempt to admit the Dade County forms as business records authenticated by Edwards' son and a County official.