[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 20, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14385
Non-Argument Calendar
_____

D. C. Docket No. 05-00091-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENT DEWATER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(March 20, 2007)**

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

**I.**

Kent Dewater appeals his conviction for drug and firearm related offenses, arguing that his plea was not given freely and voluntarily due to misrepresentations by his defense counsel.

**II.**

Dewater and his wife were indicted for conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841 (Counts 1 and 2); using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3); and maintaining a place for the purpose of manufacturing or distributing a controlled substance, in violation of 21 U.S.C. § 856 (Count 4). Dewater agreed to plead guilty to all four counts pursuant to a written plea agreement. The plea agreement did not identify the amount of drugs for which Dewater would be responsible, but it explained that his sentence could not be predicted and that the court was not bound by any recommendations. It further explained that the court could consider other facts and events when imposing sentence and that imposition of a sentence greater than anticipated was not grounds for withdrawal of his plea.

In connection with his plea agreement, Dewater had signed a factual

2

summary detailing his offenses. The factual summary explained that a confidential informant had engaged in controlled buys of methamphetamine from Dewater, and, as a result, police obtained a search warrant for Dewater's home. The police search of Dewater's home uncovered methamphetamine in the house and in the car and at least 18 firearms. The factual summary also explained that Dewater had admitted receiving methamphetamine from a source for the past six years and selling the methamphetamine to at least seven individuals.

At the change of plea hearing, Dewater acknowledged that he had reviewed with counsel and signed the factual summary and plea agreement. With regard to his plea agreement, he also indicated that there were no other promises made, that he had not been threatened or coerced into pleading guilty, and that he was satisfied with his counsel. The district court found that Dewater's plea was given freely and voluntarily and accepted the plea.

After the district court adjudicated Dewater guilty, defense counsel moved for a psychiatric evaluation to determine his competency. The court granted the motion, and the evaluation determined that Dewater was able to understand the proceedings and contribute to his defense. At a hearing, the court found Dewater competent. Dewater then indicated to the court that he was dissatisfied with counsel and that he felt that counsel had forced him to plead guilty. Dewater also

3

argued that he was not guilty of the weapons charge (Count 3) because the firearms were used for hunting and as collector's items. Counsel for Dewater informed the court that there had been a breakdown in communication and that appointing new counsel may be appropriate. The government noted that defense counsel had been very thorough in explaining the plea agreement to Dewater and that there was no indication of any promises of threats. The district court removed defense counsel and appointed new counsel.

The probation officer prepared a presentencing investigation report ("PSI"), concluding that the total amount of drugs Dewater had been involved with was estimated to be 2,041.2 grams, even though during the search police uncovered only about 24 grams in the house and car. Based on this amount of methamphetamine, the PSI listed the base offense level as 34 under U.S.S.G. § 2D1.1. Dewater then objected to the amount of drugs. According to the addendum to the PSI, Dewater's attorney did not deny the factual basis for the probation officer's calculation regarding the total amount of drugs in the PSI, but, rather, argued that the United States Attorney's Office had agreed that Dewater would only be held accountable for the methamphetamine purchased during the controlled buy and found in his home during the search. If this amount had been used in the PSI, the base offense level would have been 20. In response, the probation officer

indicated that the government had not agreed to a specific weight. Rather, the probation officer noted that the government had agreed only that it would not charge Dewater with a specific amount in order to avoid any mandatory minimum term of imprisonment.

At sentencing, the court overruled Dewater's objections to the PSI. Dewater again indicated that he had been misled by defense counsel about the possible sentence given the quantity of drugs for which he was held responsible. His counsel, however, told the court that Dewater wanted to "get this over" and, as such, he did not want to file a motion to withdraw the plea. Rather, Dewater wanted to leave the plea as stated and go forward. The court sentenced Dewater to 168 months imprisonment, which consisted of 108 months on Counts 1, 2, and 4, to be served concurrently, and a consecutive 60-month term of imprisonment on Count 3.

### III.

Dewater argues on appeal that the district court plainly erred by accepting his plea agreement because the plea was the result of misinformation by defense counsel, which resulted in inaccurate information about the consequences of the plea. According to Dewater, the parties agreed that he would not be held responsible for the total amount of drugs with which he was involved and that this

understanding, as represented by counsel, led him to enter the plea.

"[I]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party. The doctrine of invited error is implicated when a party induces or invites the district court into making an error. Where invited error exists, it precludes a court from invoking the plain error rule and reversing." United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006); United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir. 2005).

Here, Dewater informed the district court at the change of plea hearing that he was satisfied with counsel and that he had reviewed with counsel and signed the plea agreement and factual statement of his guilt. Even after the appointment of new counsel, who raised the question of whether there had been any misrepresentation, Dewater chose not to withdraw his plea. Therefore, Dewater invited the alleged error and he may not challenge it on appeal.

Even if Dewater had not invited the alleged error, his appeal would still fail. When a defendant fails to assert a Federal Rule of Criminal Procedure 11 ("Rule 11") violation in the district court, we review for plain error. United States v. Quinones, 97 F.3d 473, 475 (11th Cir. 1996). To establish plain error, Dewater must show "that there was error, that the error was plain, and that it affected his substantial rights, i.e., the error affected the outcome of the district court

6

proceeding." United States v. Hayes, 40 F.3d 362, 364 (11th Cir. 1994). Once the appellant proves these three elements, this court may correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. In evaluating whether there was any effect on the defendant's substantial rights, we may consider the record as a whole. United States v. Monroe, 353 F.3d 1346, 1350 (11th Cir. 2003) (quoting United States v. Vonn, 535 U.S. 55, 59, 122 S. Ct. 1043, 1046, 152 L. Ed. 2d 90 (2002)).

Under Rule 11, the district court must address three core principles before accepting a guilty plea: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." United States v. Jones, 143 F.3d 1417, 1418-1419 (11th Cir. 1998). Here, during the plea colloquy, the court explained the consequences of the plea. Dewater confirmed that he had not received any promises in return for pleading guilty and that he had not been coerced into entering the plea. Furthermore, the plea agreement itself specifically stated that the possible sentences would be determined by the court and could not be predicted. In light of these facts, Dewater cannot show any error in the district court's acceptance of his plea.

Accordingly, we **AFFIRM**.