[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17063
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-20614-MGC-6

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSE NEDA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 27, 2017)

Before HULL, WILSON and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jose Neda appeals his convictions stemming from a multi-defendant drug smuggling conspiracy. He argues that the district court erred in denying his motion to dismiss the indictment based on a violation of his Sixth Amendment right to a speedy trial. Although five years passed between the indictment and Neda's arrest, the district court concluded that Neda's knowledge of the criminal charges and his failure to demonstrate actual prejudice precluded the indictment's dismissal. After careful review, we affirm.

## I.    BACKGROUND

### A.    Factual History

In August 2010, Neda and his codefendants were indicted for multiple charges stemming from an attempt to smuggle cocaine into the United States and launder the sales proceeds. Neda's purported role in the conspiracy was to ensure the cocaine was loaded onto the plane in Maiquetia, Venezuela.[1] Because an informant indicated that Neda, a Venezuelan national, was living in Venezuela, the government's efforts to locate Neda were limited to a yearly check of his name in the Treasury Enforcement Communication System ("TECS") database, which tracks individuals entering and exiting the United States.

The government failed to check other available databases, such as the Florida Driver and Vehicle Information Database ("DAVID"), or contact Customs

---

[1] It is unclear if Neda followed through on his part of the conspiracy. The drugs intercepted in Miami arrived from Maracaibo, Venezuela, not Maiquetia.

and Border Protection.  Had it performed these extra steps, it might have located Neda, who moved to the United States in June 2010.

From 2010 to 2015, Neda lived openly under his real name in the Miami area.  He married, received traffic tickets, applied for credit, filed an adjustment of status application with the United States Citizenship and Immigration Services, and even requested a copy of his criminal history report from the police department—a report that indicated Neda had no local criminal record.  In 2011, an attorney entered an appearance on Neda's behalf in the federal case in which he had been indicted.  The appearance occurred months after the charges against one of Neda's codefendants were dismissed.  Nevertheless, no progress was made on Neda's case.  Officers did not arrest Neda until December 2015, more than five years after the indictment was issued, when by chance they encountered him at the airport picking up his brother and codefendant, Luis Neda.

## B.    Procedural History

After his arrest, Neda moved to dismiss the indictment, claiming that the five-year post-indictment delay violated his Sixth Amendment right to a speedy trial.  The district court held a hearing on the issue.

At the hearing, the government admitted that the five-year delay was presumptively prejudicial.  But it claimed to have reasonably believed that Neda was in Venezuela, which it argued justified its performing only an annual check on

a single database to see if Neda had entered the United States.  The government

argued that Neda's retention of an attorney demonstrated his early knowledge of

the criminal proceedings.  The government also suggested that Neda had

purposefully evaded law enforcement, pointing to traffic tickets with different

addresses, variations of his name on those tickets, and his receipt of three failure-

to-appear notices for those tickets.  Finally, the government questioned Neda's

ability to demonstrate any actual prejudice caused by the delay.

Neda presented evidence to rebut the government's argument that he had

purposefully evaded law enforcement: multiple papers with his name on them

(including car insurance documents, a marriage record, and mail from U.S.

Customs and Immigration Services) and testimony from his wife that they had

taken his traffic tickets to a legal clinic to be resolved.

The district court asked Neda to identify any actual prejudice he suffered.  In

response, Neda asserted that prejudice should be presumed and suggested that

because "five years is just over the top . . . . [T]he indictment should be dismissed."

Doc. 134 at 61.[2]

The district court denied Neda's motion.  On the one hand, the court found

that the government was "at best" negligent because Neda "was living open[ly]

and notoriously in the United States, . . . making [no] effort to hide at all," and

---

[2] Unless otherwise specified, all citations in the form "Doc. __" refer to the district court docket entries.

4

"law enforcement sort of dropped the ball." *Id.* at 72.  On the other hand, the court found that Neda was aware of a criminal proceeding against him, citing his retention of an attorney in 2011, after his codefendant's charges were dropped. Because the court concluded that Neda was aware of the case against him, Neda was required to demonstrate actual prejudice.  He failed to do so, and the district court denied his motion.

After a jury trial, Neda was convicted on two counts—conspiracy to import five kilograms or more of cocaine into the United States, in violation of 21 U.S.C. § 963, and conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846—and acquitted on the remaining charges. He was sentenced to 150 months' imprisonment.  This is his appeal.

## II.    STANDARD OF REVIEW

Whether a defendant's constitutional right to a speedy trial has been violated is a mixed question of law and fact.  *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006).  We review *de novo* questions of law; we review findings of fact for clear error.  *Id.*  "A factual finding is clearly erroneous only if, after we review the evidence, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010) (internal quotation marks omitted).

## III.    DISCUSSION

Neda argues that the delay between his indictment and arrest deprived him of his Sixth Amendment "right to a speedy and public trial."[3] U.S. Const. amend. VI. We apply a balancing test to determine whether Neda's speedy trial right has been violated, considering four factors: 1) the length of the delay, 2) the reason for the delay, 3) Neda's assertion of his right, and 4) prejudice to Neda. *Barker v. Wingo*, 407 U.S. 514, 530-31 (1972). "In this circuit, a defendant generally must show actual prejudice unless the first three factors in *Barker* all weigh heavily against the government." *United States v. Davenport*, 935 F.2d 1223, 1239 (11th Cir. 1991). Although the delay—due, at best for the government, to its own negligence—lasted over five years, the district court found that Neda knew of the charges but waited to assert his speedy trial right until after his arrest. We cannot say this finding was clearly erroneous. Further, the district court correctly concluded that Neda failed to demonstrate actual prejudice. Thus, we must reject

---

[3] In his brief on appeal, Neda also asserts that the trial court erred in permitting the government to introduce at his criminal trial evidence of a 2007 drug importation scheme. Neda argues this evidence "made the speedy trial violation [ ] more egregious since it made the post trial delay almost 9 years." Appellant's Br. at 20. To the extent Neda intends to challenge the admission of this evidence at trial, his passing reference to it is insufficient; he therefore has abandoned any such challenge. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("Under our caselaw, a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue—even if properly preserved at trial—will be considered abandoned.").

Neda's argument that the district court erred in denying his motion to dismiss the indictment. We will look to each factor in turn before balancing.[4]

## A.    The *Barker* Factors

### 1.    Length of the Delay

The first *Barker* factor requires that we undertake a dual inquiry. First, we must determine if the length of the delay is presumptively prejudicial, which acts as a triggering mechanism to proceed with the speedy-trial analysis. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530. Neda's speedy trial clock began ticking in August 2010, when he was indicted. It ran for over five years, until officers arrested Neda in December 2015 and Neda filed his speedy trial motion in early 2016. The government concedes that this five-year delay was presumptively prejudicial, and we agree. *See Ingram,* 446 F.3d at 1336 (explaining that a delay of more than 12 months is presumptively prejudicial).

Second, since the length of delay was presumptively prejudicial, we must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett v. United States*, 505 U.S. 647, 652 (1992). "[T]he presumption that pretrial delay has prejudiced the accused intensifies over time." *Id*. Thus, the longer the delay, the more heavily it

---

[4] The district court did not clearly separate its factual findings for each factor, but it provided a sufficient record for our review to proceed.

weighs against the government.  We previously have found that delays lasting close to five years weigh heavily against the government.  *See Ingram*, 446 F.3d at 1338-39 (reasoning that a 2 year post-indictment delay, coupled with a 2.5 year pre-indictment delay, weighed heavily against the government).  So too here. Neda's pretrial delay was more than five times the length of the threshold required to establish presumptive prejudice; therefore, this factor weighs heavily against the government.

### 2.    Reason for the Delay

The second *Barker* factor we must consider is the government's reason for the delay.  Here, the reason for the delay primarily stemmed from the government's negligence in searching for Neda, who lived openly in Miami from his indictment until his arrest.

We assign different weights to this second factor, depending on the reason for the delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence . . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531 (footnote omitted).  Indeed, the longer the delay, the heavier the government's negligence must be weighted.  *See Doggett*, 505 U.S. at

8

657 ("[T]he weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.").

The district court concluded that the government was "at best" negligent.[5] Doc. 134 at 72. We agree. The government has the duty to bring a defendant to trial, *Barker,* 407 U.S. at 527, a duty it appears to have taken rather lightly in Neda's case. The government checked the TECS database once a year to see if Neda had entered the United States. Although other databases, such as DAVID, were available, the government failed to check those. Neda was listed as a fugitive from justice, but the warrant apparently was not relayed to other law enforcement offices, because Neda received traffic tickets under his own name and obtained his criminal history report directly from a police station. As the district court noted, the government seems to have failed to perform "law enforcement 101" in Neda's case. Doc. 134 at 53-54.

The government argues that Neda purposefully evaded law enforcement, thus contributing to the delay. The district court rejected this argument, finding instead that Neda made "[no] effort to hide at all." *Id.* at 72. In support of its argument, the government points to records indicating that Neda provided variations of his full name to state officers and thrice failed to appear on traffic summonses.

---

[5] Neda does not argue that the government acted in bad faith.

9

The government has failed to show that the court's finding of fact was clearly erroneous.  First, the records in DAVID refer to Neda as both "Jose Rafael Neda Boza" (his full name) and "Jose Rafael Boza," (no great stretch from his full name).  Second, Neda's wife testified that they had taken Neda's traffic tickets to a legal clinic and believed they had been resolved.  Third, Neda provided documents such as car insurance, a marriage record, and mail from U.S. Customs and Immigration Services, all with his full name.  On these facts, the district court did not clearly err in finding that Neda made no effort to hide.

Although the district court determined that Neda was living openly and not as a fugitive, it also suggested that Neda might have contributed to the delay by being difficult to locate.  The court found that Neda's attorney—who was retained in 2011 and withdrew in 2013—withdrew not because he lacked "the physical or mental capacity to perform as a lawyer because of illness," but rather because he was "having trouble finding" Neda.  *Id.* at 62-63.

This finding was clearly erroneous.  Neda's attorney's motion to withdraw indicated that he sought to withdraw because he would be receiving long-term treatment for health problems and was unable to continue to practice law.  To be fair, the motion also stated that his office was attempting to reach Neda to inform him of his attorney's status but had not yet been successful, but that was not provided as the reason for the withdrawal.  Still, the district court clearly erred in

10

its finding that Neda's attorney withdrew because Neda was missing, rather than because of a long-term illness; we therefore will not consider this evidence when weighing the *Barker* factors.[6]

In sum, because the reason for the delay between indictment and arrest was caused by the government's negligence, this factor weighs against the government. Though not weighted as heavily as a deliberate and bad faith delay, the government's negligence in this case spanned years and must be counted against the government.

### 3. Assertion of Right

The third *Barker* factor requires us to consider when and how often Neda asserted his speedy trial right. The district court found that Neda first raised his right in February 2016, two months after his December 2015 arrest, but years after learning about his pending case. If a defendant asserts his right in a timely manner, then he raises an "inference that [he] was not at fault for the delay and that the delay prejudiced [him]." *Villarreal*, 613 F.3d at 1354. A defendant who is unaware that charges were pending against him cannot be faulted for a failure to make a demand. *Id.* But if a defendant knows of the charges and does not assert

---

[6] At the hearing the district court relied on the government's proffer of the motion to withdraw. It appears that the government may have misled the court by relaying only the portion of the motion that mentioned the efforts to notify Neda, omitting the portion about counsel's illness, and staying silent when the district court made the finding above.

his right, it will be "difficult . . . to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532.

For example, in *Villarreal*, the defendant argued that he had timely asserted his speedy trial right because he raised it shortly after arrest. We rejected his argument, however, because the district court had found he had known for years that the government was seeking to prosecute him, as evidenced by his taking steps to evade the police to avoid detection. Thus, we found that this factor weighed heavily against the defendant. *Villarreal,* 613 F.3d at 1354-55.

Like the defendant in *Villarreal*, Neda argues that this factor should weigh in his favor because he asserted his right shortly after arrest. His argument similarly fails, however, because the district court found that Neda was aware much earlier of his case—if not of the actual indictment, of some sort of "criminal action against him." Doc. 134 at 73. The court based its finding on the fact that an attorney made an appearance on Neda's behalf in 2011. We cannot say this finding was clearly erroneous. Thus, even though Neda did not intentionally evade law enforcement, his failure to assert his speedy trial right earlier—despite knowledge of the criminal proceeding—weighs heavily against him. *See Doggett*, 505 U.S. at 653 (noting that if the defendant had known of his indictment years before he was arrested, the third factor would weigh heavily against him).

12

Neda argues that the trial court erred in weighing his hiring of counsel against him, noting that the burden is on the government to bring the defendant to trial. He is correct: the right to a speedy trial "places the primary burden on the courts and the prosecutors to assure that cases are brought to trial." *Barker*, 407 U.S. at 529. Nevertheless, a defendant who is aware of the charges against him but does not assert his speedy trial right will find that this factor weighs against him. *Id.* at 531-32.

Because there is evidence that Neda knew about the charges as early as 2011, but did not raise his speedy trial right until February 2016, factor three weighs heavily against Neda.

### 4.    Prejudice

The fourth *Barker* factor requires us to examine what prejudice, if any, Neda suffered as a result of the delay. The Supreme Court has identified three interests that may be prejudiced by a pretrial delay: 1) preventing pretrial incarceration, 2) minimizing the accused's anxiety and concern, and 3) limiting the possibility of the defense's impairment. *Id.* at 532. As to the first interest, Neda was not incarcerated during the five years between indictment and arrest. As regards the second, he does not allege that he suffered anxiety or concern (indeed, his argument necessarily rests on the premise that he was unaware his case had not

13

been resolved).  Our focus, then, will be on the third interest:  the potential impairment of Neda's defense.

We recognize that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'"  *Doggett*, 505 U.S. at 656 (quoting *Barker*, 407 U.S. at 532).  Nevertheless, our precedent requires Neda to show actual prejudice because the first three *Barker* factors do not all weigh heavily against the government.  *See Villarreal,* 613 F.3d at 1355 ("If . . . the first three factors do not weigh heavily against the government, the defendant generally must demonstrate actual prejudice to succeed on his speedy trial claim.").  Unfortunately, Neda has failed to meet this burden.

In his motion to dismiss the indictment, Neda asserted that the delay "weakened [his] ability to see and hear the original evidence, raise specific defenses and elicit specific testimony."  Doc. 77 at 5.  Such conclusory allegations are insufficient to establish actual prejudice, however.  *United States v. Clark*, 83 F.3d 1350, 1354 (11th Cir. 1996).  At the hearing on the motion, the district court gave Neda a chance to elaborate, asking directly:  "[W]hat is your actual prejudice?"  Doc. 134 at 59.  Neda failed to respond to the question, instead returning to his argument that a five-year delay should result in presumed prejudice.  Without any evidence of actual prejudice before it, the district court was

14

bound to conclude that Neda suffered none. Thus, this factor weighs heavily against Neda.[7]

## B. Balancing the Factors

Having considered each *Barker* factor, we now balance them. In this case, factor one weighs heavily against the government. Factor two weighs against the government, but less heavily. Factors three and four weigh heavily against Neda. Additionally, because the first three factors do not all weigh heavily against the government, Neda must show actual prejudice. *See Davenport*, 935 F.2d at 1239. As explained above, Neda has failed to do so. The district court thus committed no error in concluding that Neda's Sixth Amendment right to a speedy trial was not violated.

---

[7] On appeal, Neda provides for the first time details indicating that the delay actually prejudiced his defense, pointing to the destruction of original recordings and his inability to locate alibi witnesses due to the worsening political situation in Venezuela. The district court lacked an opportunity to pass on these specific theories, so we cannot do so now. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1332-35 (11th Cir. 2004) (explaining that absent exceptional circumstances, we will not consider arguments that are raised for the first time on appeal). In the alternative, we may review for plain error issues not raised before the district court. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). "[Neda] can succeed [on plain error review] only if he can show that there was error, that the error was plain, and that it affected his substantial rights, i.e., the error affected the outcome of the district court proceedings." *United States v. Hayes*, 40 F.3d 362, 364 (11th Cir. 1994). Neda does not identify how access to original recordings would have benefitted him (indeed, he argued at the closing of his criminal trial that the absence of recordings cast doubt on the government's case), nor does he provide the names of his missing witnesses or what their testimony would have shown. Therefore, we find no plain error.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order denying the motion to dismiss Neda's indictment for a violation of his Sixth Amendment speedy trial right.

**AFFIRMED.**