UNITED STATES of America, Plaintiff,

v.

Augusto FALCON, Defendant.

No. 88–327–CR.

United States District Court,
S.D. Florida.

Feb. 24, 1997.

Michael Patrick Sullivan and Christopher Clark, Asst. U.S. Attorneys, Miami, FL, for Plaintiff.

Albert J. Krieger, Scott A. Srebnick, Miami, FL, L. Mark Dachs, Miami, FL, for Defendant.

**ORDER**

MARCUS, District Judge.

THIS CAUSE comes before the Court upon the Defendant's "Post–Trial Motion to Dismiss Indictment and for Judgments of Acquittal or, in the Alternative, for a New Trial" and "Motion to Exceed Page Limit," both filed October 28, 1996. These motions are ripe for resolution. After a thorough review of the record and pleadings, and being otherwise advised in the premises, the Defendant's motion to dismiss, for judgment of acquittal and/or for new trial must be and is DENIED. The Defendant's motion to exceed page limitation is GRANTED.

I.

On September 25, 1996, after a trial before this Court, a jury convicted the Defendant of three counts of making a false statement on an application for acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6), and three counts of receipt of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(h)(1) (the "gun case"). These charges related to conduct alleged to have taken place in 1983 and 1984. Falcon was indicted for the offenses on May 13, 1988, although he was not arraigned on the charges until February 20, 1996. In an Order dated April 19, 1996, the Court denied the Defendant's motion to dismiss the indictment for violation of his constitutional right to a speedy trial. *United States v. Falcon*, 930 F.Supp. 1510 (S.D.Fla. 1996). The Defendant is to be sentenced for his convictions on February 24, 1997.

With the pending substantive motion, Falcon seeks at least one of three forms of relief. First, he essentially asks this Court to reconsider its ruling on the motion to dismiss in light of developments during the trial. Second, he asks the Court to enter a judgment of acquittal on all counts, based on insufficient evidence. Third, he requests a new trial based on the Court's (1) admission of hearsay testimony concerning the ATF Form 4473's signed in the name of Falcon's alleged alias, Wilfredo Fernandez; (2) incomplete and/or erroneous jury instructions concerning the statutory "likely to deceive" element of the section 922(a)(6) offenses; and

(3) incomplete and/or erroneous jury instructions concerning the statute of limitations.

The Court considered, and rejected, all of these arguments during or immediately after the Defendant's trial. In each instance, the Court explained its rulings at some length. For the reasons stated on the record at the close of the Government's case-in-chief and again at the close of the evidence, and upon an independent review of the file, the Court finds that the evidence was sufficient to sustain Falcon's conviction on all of the counts pled in the indictment. The Court also finds no error in its admission of the ATF Form 4473's. That being said, Falcon's other objections require some additional discussion, so we address them in turn.

## II.

In its April 19th Order, the Court rejected the Defendant's argument that the indictment should be dismissed based on the Government's failure to arraign and try him on these charges during the over 4½ years between his arrest in October, 1991 and the Spring of 1996.[1] The Court provided the following background to its ruling:

> On May 12, 1988, a federal grand jury in the Southern District of Florida returned [the instant] indictment.... A warrant for the Defendant's arrest was issued in conjunction with the return of the indictment.
>
> Between 1988 and October of 1991, the Defendant was a fugitive from justice on these firearms charges, as well as a drug trafficking conviction in the Dade Circuit Court and a separate drug trafficking charge before a California state court. While Falcon was a fugitive, on July 19, 1990, a federal grand jury in the Middle District of Florida returned a superseding indictment charging Falcon with partic-

ipation in a money laundering conspiracy (the "Jacksonville case"). Ten months later, on April 10, 1991, a federal grand jury in this District returned an indictment charging the Defendant, among others, with multiple narcotics offenses (the "drug case"). Arrest warrants for these federal charges were issued in conjunction with the return of the indictments.

> On October 15, 1991, a joint task force of federal and state agents under the direction of the United States Marshals Service located the Defendant in Fort Lauderdale, where he was residing under an assumed name. At the time of his apprehension, the Defendant was wanted on the federal charges documented above, as well as the separate non-federal narcotics cases in Florida and California. On October 16, 1991, members of the Warrants section of the Miami office of the Marshals Service executed the arrest warrant for the drug case and took Falcon into detention. The warrant for the gun charge was not executed at that time. According to James Tassone, Chief Deputy United States Marshal for the Southern District of Florida, the Marshals Service arrested Falcon on the drug charge alone due to a "memorandum of understanding" between the Service and the United States Drug Enforcement Administration ("DEA"), which gave the United States Marshal primary responsibility for the execution of outstanding arrest warrants on DEA fugitives. [However,] the Marshals Service did not have a memorandum of understanding with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), which typically took responsibility for the execution of arrest warrants on fugitives wanted for firearms offenses....

---

1. At the time of this Court's written ruling on the motion to dismiss, Falcon's trial was scheduled for early May, 1996—some 55 months after his arrest in October, 1996. In late April, 1996, the Court granted the Defendant's motion for a continuance of the trial, and set a new trial date of July 8, 1996. Prior to the start of jury selection on July 8th, the Defendant moved for a continuance and/or a change in venue based on perceived prejudicial pre-trial publicity. The Court granted the request for a continuance, and set

September 16, 1996 at the date for trial. In a subsequent Order dated August 30, 1996, the Court denied the parties' cross-motions for a change in venue.

At the time of his initial motion, Falcon conceded that, due to his fugitive status, the Government's obligation to execute the warrant of arrest or arraign him on the gun charges did not commence until October 16, 1991, the date he was apprehended on the drug charges.

The arraignment [on the drug case] took place before United States Magistrate Judge Ted E. Bandstra on October 16, 1991. The case was then assigned to United States District Judge Federico A. Moreno. Thereafter, the Defendant moved for a trial continuance until November of 1992, again for a continuance of trial from October 19, 1992 until April 19, 1993 and still again (on December 11, 1992) sought a continuance of the April 1993 setting, all of which the Court granted. On September 29, 1993, the Defendant again moved to continue the drug trial. Judge Moreno denied the application, but, on September 30, 1993, granted a defense motion to suppress evidence, prompting an interlocutory appeal by the Government and resulting in an extensive delay of the trial proceedings while the matter was pending before the Court of Appeals. The Eleventh Circuit issued its Order on the interlocutory appeal on February 21, 1995, at which time the district court set the drug case for trial on October 16, 1995. Thereafter the Defendant sought still another continuance. After more than four months of trial, a jury acquitted the Defendant of all charges on February 16, 1996. On the next business day (February 20, 1996) the Marshals Service executed the outstanding arrest warrant for the gun charge along with a separate arrest warrant for the Jacksonville money laundering case. Falcon was arraigned on the firearms charge on February 20, 1996, and thereafter the case was re-assigned to this Court.

930 F.Supp. at 1511–12 (footnotes and citations omitted). After summarizing these facts, the Court applied the four-part test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker*, the United States Supreme Court identified four factors that are pertinent to a speedy trial analysis: (1) the length of the delay; (2) the reason for the delay; (3) the Defendant's assertion of his speedy trial rights; and (4) the amount of prejudice suffered by the Defendant as a result of the delay. 407 U.S. at 530–32, 92 S.Ct. at 2192–93. Initially, the Court found that the length of the delay was "presumptively prejudicial" and weighed in favor of dismissal. 930 F.Supp. at 1513.

Next, the Court found that "the delay was not the product of [bad faith or] carelessness on the part of law enforcement officials. Rather, it was the result of a reasonable decision (supported by the tacit agreement of all of the parties involved) to focus attention on the far more complex and serious drug proceeding." *Id.* at 1513–14. The Court also noted that "the Defendant himself must accept much of the responsibility for the halting pace of the drug case, in light of his frequent motions for continuance." *Id.* at 1514. Accordingly, we agreed that this *Barker* factor weighed in favor of Falcon, "although not to the extent that the Defendant would have us accept." *Id.* Third, the Court found that Falcon had essentially acquiesced in the Government's delay:

> The Supreme Court and the Eleventh Circuit have recognized that a defendant has the "responsibility to assert a speedy trial claim" and that "the failure to assert the right will make it difficult for a Defendant to prove that he was denied a fair trial." *United States v. Hayes*, 40 F.3d 362, 366 (11th Cir.1994) (quoting *Barker*, 407 U.S. at 529, 532, 92 S.Ct. at 2191, 2193), *cert. denied*, —— U.S. ——, 116 S.Ct. 62, 133 L.Ed.2d 24 (1995); *see also Doggett [v. United States]*, [505 U.S. 647 at 652–53] 112 S.Ct. [2686] at 2691 [120 L.Ed.2d 520 (1992)] (indicating that if the defendant had been aware of the indictment years before he was arrested, this fact "would be weighed heavily against him"). There is no dispute that Falcon and his counsel never attempted to invoke his speedy trial rights, or otherwise bring the gun charge to the attention of prosecutors or a court [even though he was aware of the charges against him perhaps as early as 1988]....
>
> Falcon's failure to invoke his speedy trial rights in this proceeding is all the more telling in light of his behavior with regard to the charges pending against him in other jurisdictions. For example, on June 4, 1993 and again on February 10, 1994, Falcon filed a petition for writ of habeas corpus ad prosequendum in the Jacksonville money laundering case. In the petition, the Defendant sought an arraignment and the issuance of a writ so that his case

might proceed to trial. The applications were denied by a court in the Middle District of Florida. In a letter that pre-dated the first motion, Defendant's counsel wrote to the assistant United States Attorney supervising the Jacksonville prosecution in an effort to clarify his client's status, stating that "[i]f it is your intention to proceed to trial in the matter pending in your division, we would appreciate being so advised and meeting with you to discuss scheduling and other related matters. If it is not your intention to proceed, then we would still like to talk with you concerning dismissal of this matter. It should not remain endlessly in a state of limbo."

In April of 1995, the Defendant filed another petition for a writ of habeas corpus ad prosequendum with the California court overseeing narcotics charges pending against him in Los Angeles. The state prosecutor responded to this motion by dismissing all of the outstanding charges. This evidence establishes that Falcon, through his counsel, had the wherewithal to bring the gun charges to a boil. The uncontroverted and unexplained fact that he chose not to suggests that, either pursuant to an implicit agreement with Government counsel or for his own sound tactical reasons, Falcon was just as willing as the United States to let the gun charge linger for the duration of the drug prosecution before the district court.

Falcon rightly insists that a defendant does not forego his Sixth Amendment right to speedy trial by failing to seek his own arrest and prosecution. For this reason, we do not agree with the Government's apparent suggestion that Falcon's failure to invoke his rights is in and of itself fatal to this motion. Nevertheless, while we recognize that a defendant is not obliged to call himself to trial, Falcon's failure to do so not only weighs against dismissal of this indictment, but underscores the Government's argument that its delay, while deliberate, was not motivated by a desire to obtain improper tactical advantage, and suited the interests of the Defendant (as well as the United States) in resolving the more complex and serious drug case prior to proceeding on the firearms charges.

*Id.* at 1514–15 (some citations omitted). Finally, we concluded that Falcon had failed to establish any actual prejudice as a result of the delay:

> Falcon argues that his ability to put on an effective defense has been undermined as a result of the Government's delay in bringing this case to trial, because Ralph Edwards [Sr.]—the licensed firearm dealer who sold Falcon the firearms identified in the indictment—died in 1995. Falcon contends that Edwards would have been the "principal witness" for the defense. He fails to articulate, however, how, if at all, Edwards might have been able to exculpate the Defendant. Indeed, it is at least as probable that Edwards would have implicated the Defendant in the illegal firearm transactions. In addition ... Edwards' absence makes it far more, rather than less, difficult for the United States to admit the records [concerning the alleged firearms transactions]. The Defendant does not suggest that documents or records relevant to this prosecution have been lost or damaged during the period between Falcon's apprehension in October of 1991 and the date of this Order. Moreover, the Government conceded at oral argument that it would not contest any effort to credit the time Falcon has served on pretrial detention against any sentence he might receive in the case at bar. It follows, therefore, that Falcon is unable to make a showing of actual prejudice from the delay in bringing this case to trial. The final *Barker* factor thus weighs in favor of the United States.

*Id.* at 1516–17. Based on this analysis of the materials presented by the parties, the Court concluded that no Sixth Amendment violation had taken place.

■ With his post-trial motion, Falcon focuses solely on the fourth *Barker* factor. He argues that events during the trial establish that he suffered actual prejudice from the delay. First, he contends that the unavailability of Ralph Edwards, Sr. ("Edwards, Sr.") as a witness interfered with his ability to present a defense to the section 922(a)(6) counts, since the testimony of the dealer's

son, Ralph Edwards, Jr. ("Edwards, Jr.") suggested that Edwards, Sr. may have known the Defendant (thereby making it un-. likely that Edwards, Sr. would have been deceived by Falcon's alleged misrepresentations).[2] Falcon also contends that Edwards, Sr. would have acknowledged that his recording of transaction dates was "not necessarily accurate." It is altogether speculative, however, for the Defendant to suggest that Edwards, Sr. would have supplied exculpatory testimony. It is equally plausible that Edwards, Sr. would have denied any knowledge of Falcon's felon status and confirmed the accuracy of the records. Indeed, Edwards, Sr. might well have squarely implicated the Defendant as the individual who completed the application and took possession of the firearms. We do not agree that the exculpatory value of Edwards, Sr.'s testimony may be "reasonably inferred" from the testimony of his son.

Next, Falcon points out that the Court—over his objection—admitted testimony concerning an oral statement made by Edwards, Sr. to an ATF agent in February, 1988, several years after the transactions at issue here. In his statement, Edwards, Sr. told the agent that he had reviewed records indicating the purchase of firearms by Wilfredo Fernandez. Edwards Sr. explained how records of this kind were prepared, "during the normal course of business." He added that it was his signature that appears under section "B" of the Form 4473's (reflecting the transfer of the purchased firearm), and noted that "if the form was signed the firearm was definitely given to the buyer." Edwards Sr. also indicated that he did not recall the name "Willie Fernandez." The Court initially rejected the Government's effort to introduce this statement or refer to its contents, finding that it lacked sufficient indicia of reliability and trustworthiness to come within the "catch-all" hearsay exceptions of Fed.R.Evid. 803(24) and 804(a)(5). During the cross-examination of the pertinent ATF agent (Snyder), however, Defendant's counsel inquired into the substance of Edwards Sr.'s remarks

to her. Accordingly, on re-direct examination, the Court permitted Government counsel to elicit testimony concerning Synder's recollection of Edwards, Sr.'s comments regarding his handling of the specific transactions at issue. Falcon contends that, if Edwards, Sr. had been alive, the defense would have been able to attack the credibility of his representations to Agent Synder concerning the method of record-keeping at the shop. It was Falcon, however, who opened the door to Synder's testimony, by specifically exploring the contents of the statement (notwithstanding the Court's Order precluding the admission of the hearsay evidence).

■ In any event, even if we were to agree, and we do not, that Falcon has shown substantial prejudice due to the absence of Edwards, Sr., this finding does not mandate dismissal of the indictment. As the Eleventh Circuit has observed, no single *Barker* factor is dispositive, and the test must be applied in a manner consistent with the specific facts of the case at bar. *See, e.g., United States v. Davenport,* 935 F.2d 1223, 1239 (11th Cir. 1991). In this instance, Falcon bears a significant measure of responsibility for the delay in bringing these gun charges to trial, especially when his acquiescence in this case is contrasted with the affirmative steps he undertook to obtain the dismissal of charges pending in Los Angeles and Jacksonville. Moreover, there is no indication that the Government deliberately delayed its prosecution of this case in order to obtain a tactical advantage, or that it negligently allowed the gun charges to slip through the cracks between the Fall of 1991 and February of 1996. Indeed, Edwards, Sr.'s absence made it more difficult for the United States to introduce the documentary evidence prepared at Edwards Appliance shop, and may have deprived the Government of testimony directly implicating the Defendant in the alleged transactions.

■ Finally, Falcon maintains that the delay "dimm[ed] the memor[y]" of the principal defense witness, Edwards, Jr. According to

---

2. Notably, the false statements alleged in the indictment concern Falcon's status as a convicted felon, not his identity. Accordingly, evidence suggesting that Edwards, Sr. knew Falcon at

various points in time does not in and of itself support the proposition that Edwards, Sr. knew Falcon was a convicted felon at the time of the alleged offenses in 1983–84.

the Defendant, Edwards, Jr. "did not remember the specific transactions in question, could not recall whether the[ ] ATF Form 4473's were blank except for the signature when he filled in Section V, could not recall when the documents were filled out and could not recall what information may have already been on the document when he completed Section B. It is entirely possible that Edwards, Jr. would have remembered these facts had the government brought this case to trial 4 years ago." Def. Mot., at 14. Falcon's apparent suggestion that Edwards, Jr. would have recalled these details if the trial had gone forward at some point prior to the Spring of 1996 is sheer speculation. Indeed, it is not altogether obvious that, if the case had gone to trial promptly after Falcon's arrest in October, 1991, Edwards, Jr. would have remembered these facts. After all, the disputed transactions occurred no less than eight years prior to the arrest.[3] For all of the foregoing reasons, we are not persuaded by the Defendant's renewed motion to dismiss.

### III.

We next address the Defendant's argument that he is entitled to a new trial based on the Court's reading of incomplete and/or erroneous jury instructions. Initially, Falcon asserts that the Court incorrectly instructed the jury concerning the elements of a section 922(a)(6) offense. According to the Defendant, language addressing the "likely to deceive" prong of the statute could have led the jury to convict the Defendant after concluding that his alleged misrepresentations were likely to deceive a *reasonable* dealer, as op-

posed the dealer who actually handled the disputed transactions. We find no error in the instruction.

■ Our starting point is 18 U.S.C. § 922(a)(6), which makes it illegal:

for any person in connection with the acquisition or attempted acquisition of any firearm . . . from a . . . licensed dealer . . . knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale. . . .

(emphasis added).[4] The jury was instructed in terms consistent with the statute:

[T]o establish a violation of Title 18, United States Code Section 922(a)(6), the United States, the [G]overnment, must establish beyond a reasonable doubt the following three elements. First, that the defendant acquired or attempted to acquire a firearm from a federally-licensed firearms dealer. Second, that in so doing, the defendant knowingly made a false or fictitious statement, orally or in writing, or knowingly furnished or exhibited a false or fictitious identification *intended or likely to deceive such dealer.* Third, that the subject of a false statement or identification was material to the lawfulness of the sale.

(emphasis added). This passage incorporated language proposed by the Defendant, but questioned by the United States. At various points throughout the trial, the Government argued that the pertinent question under section 922(a)(6) is whether the false statement was intended to deceive a reasonable dealer

---

**3.** Conceivably a trial could have taken place as early as the Fall of 1988 (approximately five years after the disputed transactions), had Falcon not been a fugitive from justice.

**4.** The indictment alleges that Falcon made a false statement that "was intended *and* likely to deceive the said licensed firearms dealer" (emphasis added). But the mere fact that the language of the indictment uses the conjunctive does not operate to change the substantive elements of the offense that the United States must establish in order to convict a defendant. *See, e.g., United States v. Haymes,* 610 F.2d 309, 310 (5th Cir. 1980) (noting in a section 922(a)(6) case that "[i]t is well established in this Circuit that a disjunctive statute may be pleaded conjunctively and

proved disjunctively"). Congress' use of the disjunctive "or" in *18 U.S.C. § 922(a)(6)* establishes that the Government may prove that defendant's statement was intended to deceive the dealer in question, or that the statement was likely to deceive the dealer. *See, e.g., United States v. Brebner,* 951 F.2d 1017, 1028 (9th Cir.1991); *United States v. Harrelson,* 705 F.2d 733, 736 (5th Cir.1983); *see also United States v. Cochran,* 546 F.2d 27, 30 (5th Cir.1977) (remarking that section 922(a)(6) does not necessarily require proof of a specific intent to disobey or disregard the law). Falcon does not challenge that portion of the Court's instruction which addressed the "intended . . . to deceive" prong.

(as opposed to "such dealer"). To this end, the United States moved to preclude Falcon from introducing evidence tending to suggest that Edwards Sr. knew the Defendant's identity and/or status as a convicted felon. This Court rejected the Government's arguments, finding that the statute's plain reference to "such dealer" required that this phrase be reflected in the instructions, and necessarily permitted evidence concerning the dealer's knowledge and/or state of mind at the time of the transactions in dispute.

Attempting to rely on this logic, the Defendant proposed an additional instruction on the meaning of the discrete phrase "likely to deceive." Although Falcon submitted several formulations of his proposed instruction, his proposal essentially would have informed the jury that "[a] false statement is 'likely to deceive' if the nature of the statement, considering all of the surrounding circumstances at the time it was made, would probably mislead or deceive the licensed firearms dealer involved in these alleged transactions." *See* Def. Supp. Inst. no. 10. The Court rejected the Defendant's proposed instruction, and instead instructed the jury as follows:

> A false statement or identification is likely to deceive if the nature of the statement or identification, considering all of the surrounding circumstances at the time it is made, is such that a reasonable person of ordinary prudence would have been actually deceived or misled.

This language drew on an instruction approved by the Court of Appeals in *United States v. Rahman,* 83 F.3d 89 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 494, 136 L.Ed.2d 387 (1996). *Rahman* concerned a defendant felon who challenged his conviction under section 922(a)(6). The defendant argued at trial that the dealer from whom he purchased the guns "was a participant in the illegal firearm sales and thus could not have been deceived by his statements." *Id.* at 92.[5] Before sending the jury to deliberate, the district judge instructed the panel along the following lines:

[T]o establish a violation of Title 18, U.S.Code Section 922(a)(6), the United States ... must establish beyond a reasonable doubt the following three elements. First, that the defendant acquired or attempted to acquire a firearm from a federally-licensed firearms dealer. Second, that in so doing, the defendant knowingly made a false or fictitious statement, orally or in writing ... intended or likely to deceive such dealer. Third, that the subject of a false statement was material to the lawfulness of the sale....

A false statement ... is likely to deceive if the nature of the statement ... considering all of the surrounding circumstances at the time it is made, is such that a reasonable person of ordinary prudence would have been actually deceived or misled.

*Id.* at 92. On appeal, the defendant argued that these instructions effectively precluded the jury from accepting his theory of the case. The Fourth Circuit disagreed:

> Rahman's argument is misdirected. The challenged instruction provided the jury with guidance concerning how to evaluate whether a statement is a misrepresentation that is likely to cause deception: It properly directed the jury to apply an objective, or reasonable person, standard in evaluating the likelihood that the statement would deceive anyone. If the jury concludes that a statement is likely to deceive—i.e., that considering all of the surrounding circumstances, a reasonable person of ordinary intelligence would have been misled or deceived by the statement—the jury may properly infer that the false statement was likely to deceive "such dealer."

> [T]he portion of the jury charge to which Rahman objects correctly charged how a jury should approach the issue of whether a statement is likely to deceive. *This portion of the charge was not addressing the "such" dealer language in the statute, nor did it prohibit the jury from considering evidence that "such" dealer was not likely*

---

**5.** Falcon does not go so far as to say that Edwards, Sr. "conspired" with him to arrange the illegal gun sales, although (as noted above) he does suggest that Edwards, Sr. was aware of Falcon, and presumably his felon status, and therefore could not have been deceived by the alleged misrepresentations.

*to be deceived by a statement that was likely to deceive a reasonable person....* Accordingly, we reject Rahman's argument that the challenged instruction erroneously prevented the jury from considering his defense theory.

*Id.* (emphasis added).

■ Falcon does not squarely challenge the Fourth Circuit's reasoning or suggest that *Rahman* is unhelpful here. Instead, he maintains that, under the facts of this case, describing "likely to deceive" by referring to a "reasonable person of ordinary prudence" created a danger that the jury would misapply the law. Specifically, Falcon highlights the fact that Government counsel improperly suggested during closing argument that the alleged false statement need not be likely to deceive the dealer in question. We find the Defendant's position unpersuasive. To begin with, the jury was squarely and properly instructed that the alleged misstatement must be intended or likely to deceive "such dealer." It also was instructed that, in determining whether the statement was likely to deceive, it must consider "all of the surrounding circumstances." When Govern-

ment counsel made remarks during his closing statement that seemed inconsistent with this language, the Court sustained the Defendant's objection. Later, during his closing statement, defense counsel repeatedly and vigorously drew the jury's attention to the "such dealer" language, and argued that the alleged false statements were not intended or likely to deceive Edwards, Sr. because he knew Augusto Falcon and therefore knew he was a convicted felon. Under these circumstances, we do not agree that the instruction on the offense elements of section 922(a)(6), taken in its entirety, failed to "accurately express the law applicable to the case without confusing or prejudicing the jury." *United States v. Weissman,* 899 F.2d 1111, 1114 n. 1 (11th Cir.1990) (noting that "there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism"); *see also United States v. Hooshmand,* 931 F.2d 725, 733 (11th Cir.1991) (observing that the pertinent question is whether "the charges as a whole sufficiently instructed the jurors so that they understood the issues involved and were not misled").[6]

---

6. *Rahman* is the case closest to the one at bar. In *United States v. Haynes,* 16 F.3d 29 (2nd Cir.1994), an opinion cited by the Government during trial, the Second Circuit rejected a defendant's argument that the Government needed to prove that the seller actually was deceived by the false statement. The district court provided the following instruction to the jury with regard to the "intended or likely to deceive" clause:

Under this ... element, the government must prove that a false statement with respect to a fact material to the lawfulness of the purchase of the firearm was either intended to deceive the seller or was likely to deceive the seller. The fact that the seller may not have actually been deceived is of no consequence. It is the purchaser's purpose ... the intent with which he acted, or the likelihood that the alleged misrepresentation would deceive the seller that you are called upon to resolve.

*Id.* at 32–33. The jury thereafter returned a note requesting clarification of "intent to deceive" and "likely to deceive." The court apparently discussed with counsel the possibility of juror confusion arising out of evidence that the dealer knew the defendant's true identity (and therefore could not have been deceived by the defendant's use of a false name). The court then decided to provide the jury with supplemental instructions concerning the purpose of section 922(a)(6):

[T]he reason why [the dealer] has the forms is because they are government forms. And they

are for the purpose of the government being able to know who buys guns. It is not [for] the purpose of the shop keeper. Ultimately this information is there for the purpose of the government inspectors, like the ATF agents we heard testimony from, so they would be able to determine on behalf of the government who the transferees of these guns are.

*Id.* at 33. At the conclusion of the supplemental instruction, the district court reminded the jury of the elements of the statute. On appeal, the Second Circuit, in a terse paragraph, rejected the defendant's objection to the initial as well as the subsequent instructions:

We find no error in these instructions. In the first place, contrary to Haynes's contention, this supplemental instruction did not eliminate the statutory requirement of intent to deceive the dealer or likelihood of deceiving the dealer. That element, as noted, was repeated at the conclusion of the supplemental instruction. Secondly, there was no error in the supplemental instruction. All it did was to explain the purpose of the dealer's statutory record keeping requirements. The Senate Report on this statute confirms that the purpose of requiring firearms dealers to obtain such information from purchasers is "to assist [state and local authorities] in law enforcement activities." The Supreme Court has put it that the statute made the licensed firearms dealer

"[t]he principal agent of federal enforcement" in the control of firearms transaction.

*Id.* (citations omitted). *Haynes* is not inconsistent with the principles espoused in *Rahman.* The Second Circuit simply held that the district judge did not err by instructing the jury that Government need not prove the dealer *actually was deceived* by the statement, and did not err by instructing the jury on the purpose of the statute. There is a subtle, but theoretically important, difference between saying that the Government must prove that the dealer actually was deceived by the false statement, and saying that the statement must have been likely to deceive the dealer. The first standard is wholly subjective; the second is objective, although it may take into account certain subjective features arising out of the dealer's knowledge or state of mind. For this reason, *Haynes* does not squarely address the issue before us.

That being said, the Second Circuit's approval of the district court's supplemental instruction lends support to the argument that (notwithstanding the statute's reference to "such dealer") evidence concerning the dealer's knowledge or state of mind is irrelevant in section 922(a)(6) cases, because the statute is concerned not with the dealer, but rather with the preservation of records for the ATF and the protection of the public. In other words, since the statute ultimately is intended to aid federal law enforcement officials who someday will review the records, whether or not the false statement deceived the specific dealer with whom the defendant dealt is of no moment. This reasoning makes even more sense when we consider certain hypotheticals. For example, imagine a situation where the evidence unquestionably shows that the defendant and the dealer conspired to record a false statement and obtain guns for the defendant. In this situation, it would be difficult if not impossible for the Government to prove that the defendant made the false statement with an intent to deceive, or that the statement was likely to deceive, this dealer. But did Congress really mean to say that a defendant cannot, as a practical matter, be guilty of a section 922(a)(6) violation under these circumstances? We are not aware of any case law or legislative history squarely stating that the answer to this question should be yes.

To reiterate, the statute is not concerned with protecting the dealer—if it was, then evidence that the dealer was not or could not have been deceived might be highly probative in determining whether a violation occurred. But *Haynes* rightly acknowledges that section 922(a)(6) was designed to serve a broader law enforcement purpose. The Supreme Court discussed this purpose at some length in *Huddleston v. United States,* 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974). *Huddleston* involved the question of whether section 922(a)(6) reached certain redemptive transactions with pawnbrokers. In concluding that the statute did encompass these transactions, Justice Blackmun, writing for the 8–1 majority, offered the following analysis:

The legislative history ... supports [our] reading of the statute. This is apparent from the aims and purposes of the Act and from the method Congress adopted to achieve those objectives. When Congress enacted [section 922] it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest. Congress determined that the ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States. The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping "firearms out of the hands of those not legally entitled to possess them because of age, criminal background or incompetency."

[T]he Gun Control Act of 1968[is] thus aimed at restricting public access to firearms. Commerce in firearms is channeled through federally licensed ... dealers in an attempt to halt mail-order and interstate consumer traffic in these weapons. The principal agent of federal enforcement is the dealer....

Section 922(a)(6), the provision under which petitioner was convicted, was enacted as a means of providing adequate and truthful information about firearms transactions. Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness in keeping "these lethal weapons out of the hands of criminals ... and other persons whose possession of them is too high a price in danger to us all to allow." *Thus, any false statement with respect to the eligibility of a person to obtain a firearm from a licensed dealer was made subject to criminal penalty.*

·*Id.* at 824–25, 94 S.Ct. at 1269 (emphasis added) (citations to Senate Report, the Congressional Record and other sources omitted).

If we accept that Congress was concerned with protecting the public from felons who obtain guns through impermissible means, then it should be enough that the defendant made a false statement with the intent of deceiving or in a manner likely to deceive a "reasonable dealer." More to the point, evidence that the specific dealer with whom the defendant dealt was colluding with the defendant or otherwise could not have been deceived should be irrelevant (except, perhaps, to the extent that it sheds light on how a reasonable dealer would view the misrepresentation).

At least one federal Court of Appeals decision other than *Haynes* arguably can be read as supporting this logic. In *United States v. Elias,* 937 F.2d 1514 (10th Cir.1991), the defendant challenged the knowing and voluntary nature of his guilty plea by alleging that the district court failed to inform him that a section 922 violation requires proof of specific intent to deceive a firearms dealer. The Tenth Circuit rejected this claim, noting that "when there is evidence of misstatements to a firearms dealer, the statutory requirement of 'likely to deceive' may be satisfied even when the dealer already is alerted those statements may be false." *Id.* at 1518.

Falcon next challenges the Court's treatment of several instructions concerning statute of limitations issues. He asserts that the Court should not have instructed the jury that the Government did "not have to prove with certainty the date of the alleged offense" or that "it is sufficient if the Government proves beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged." He also asserts that the Court erred by refusing to read a proposed instruction on the statute of limitations. We are not persuaded that these objections warrant a new trial.

The indictment in this case was returned on May 12, 1988. The indictment relates to three firearms transactions. Count I alleges that Falcon made a false statement in violation of section 922(a)(6) "[o]n or about May 16, 1983." Count II alleges that Falcon received a firearm in violation of section 922(h)(1) "[o]n or about May 20, 1983." Count III alleges that Falcon made an additional false statement in violation of section 922(a)(6) "[o]n or about May 20, 1983," while Count IV alleges that he received a firearm in violation of section 922(h)(1) "[o]n or about June 1, 1983." Count V alleges a third unlawful misrepresentation "[o]n or about January 9, 1984." Count VI alleges unlawful receipt of a firearm "[o]n or about January 13, 1984." The statute of limitations for all of the charged offenses is five years. 18 U.S.C. § 3282. Accordingly, violations that occurred prior to May 12, 1983 (five years before the return of the indictment) may be deemed time-barred.

The dates prescribed in the indictment mirror those indicated on the three ATF Form 4473's and other documents purporting to record the firearms transactions of "Wilfredo Fernandez." After the close of the evidence, and during a charge conference with the Court, Falcon objected to the Government's proposed instructions concerning the dates of the alleged violations. In addition, Falcon, for the first time, asked the Court to read an instruction providing that the Government must prove beyond a reasonable doubt, as to each of the counts in the indictment, that the charged offenses took place within the limitations period (*i.e.* on or after May 12, 1983). The Court denied the Defendant's request, noting that the date of the indictment had not been introduced into evidence. The Court then denied Falcon's request to re-open the evidentiary portion of the case and/or take judicial notice of the date of the indictment. The Court also denied Falcon's request that the jury be supplied with a special verdict interrogatory asking it to make a factual determination as to whether the offenses alleged in counts I through IV occurred on or after May 12, 1983.

■ Turning first to the appropriateness of the Government's instructions to the effect that the date of the offenses need not be "prove[d] with certainty" so long as the evidence establishes that the offenses were "committed on a date reasonably near the date alleged," we find no grounds for a new trial. Neither section 922(a)(6) nor section 922(h) requires the United States to prove the precise date that the alleged violation took place. In *United States v. Griffin*, 705 F.2d 434, 436 (11th Cir.1983), for example, the Court of Appeals found sufficient evidence to sustain a conviction under section 922(h), even though the Government could

The difficulty with this reasoning is that Congress' plain and unequivocal use of the phrase "such dealer" in the express language of the statute must be accorded some meaning. Other aspects of *Elias* undercut its relevance here. The case primarily concerned the settled question of whether 18 U.S.C. § 922(a)(6) requires proof of a specific intent to disobey or disregard the law, rather than the debatable question of whether the knowledge or state of mind of the dealer is relevant to a section 922(a)(6) prosecution. Moreover, the panel's use of the word "may" can be squared with Fourth Circuit's opinion in *Rahman,* which recognizes that it is up to the jury to decide whether the false statements were likely to deceive a dealer who (unlike the hypothetical "reasonable dealer") is participating in an illegal conspiracy or should know the truth about the subject matter of the false statement. Nevertheless, *Elias,* like *Haynes,* suggests an uncomfortableness with apparent tension between the statutory language and the legislative history and public policy goals underlying the statute. *Cf. United States v. Gaudin,* —— U.S. ——, ——, 115 S.Ct. 2310, 2313, 132 L.Ed.2d 444 (1995) (stating that "[i]f statutory language is unambiguous ... the language must ordinarily be regarded as conclu-

only prove that the defendant received the firearm at some point between January 6th and March 22nd of the year in question. The panel remarked that "[u]nder [section 922(h)], proof of the specific date of the crime is not an essential element so long as it is shown to have occurred after the felony conviction, within the statute of limitations and before the indictment." *Id.* at 437.

Falcon reads *Griffin* as holding that an "on or about" instruction is not proper "without an accompanying statute of limitations instruction ... if the date of the alleged offenses are 'reasonably near' to the five year cutoff date for statute of limitations period." Def. Reply, at 8–9. Nothing in *Griffin,* however, mandates a specific instruction on the statute of limitations under these or any other circumstances. The question becomes, therefore, whether Falcon was entitled to his proposed statute of limitations instruction. As the Eleventh Circuit remarked in *United States v. Ruiz,* 59 F.3d 1151 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 956, 133 L.Ed.2d 879 (1996), the district court "may not refuse to charge the jury on a specific defense theory where the proposed instruction presents a valid defense and where there has been some evidence adduced at trial relevant to that defense." As *Ruiz* suggests, while the Defendant's evidentiary burden is "extremely low" and the record must be viewed in the light most favorable to the Defendant, there nevertheless must be a foundation for the proposal. *See United States v. Paradies,* 98 F.3d 1266, 1287 (11th Cir.1996); *United States v. Morales,* 978 F.2d 650, 652 (11th Cir.1992) (requiring "some basis" in the evidence).

Falcon contends that the record did contain a foundation for the statute of limitations instruction. Specifically, he highlights portions of the testimony of Ralph Edwards, Jr. and Rajah Rogers. Edwards, Jr. testified that he and/or his father (as opposed to the prospective customer) sometimes filled out the ATF Form 4473's. Edwards, Jr. explained that, in these instances, he and his father did not always complete the Form 4473's contemporaneously with the customer's signing the application and/or receiving a firearm. Edwards, Jr. suggested that portions of the forms may not have been filled out until as late as the start of the month following the transaction, sometimes in stacks of five or more forms at a time. Edwards, Jr. testified that he completed the entries in section B of the three Form 4473's at issue in this case. He indicated that the handwriting in section A of the first two Form 4473's appeared to be that of this father.[7] Edwards, Jr. could not identify the source of that handwriting that appears to read "Wilfredo Fernandez." Falcon asserts that it is reasonable to infer from this testimony that acts purportedly taking place on the dates indicated on the Form 4473's may have taken place some time prior to the date recorded on the forms, and that all other records maintained by the Edwards family are untrustworthy.

Rogers testified that Falcon participated in a powerboat race in Fort Myers, Florida on May 20, 1983—the day of the acts alleged in counts II and III of the indictment. Rogers also testified that Falcon participated in activities associated with the race on May 19 and 21, 1983—the day before and the day after the date of the unlawful acts alleged in counts II and III. The Defendant contends that this testimony "refutes the accuracy of the dates charged in the indictment and casts significant and further doubt upon the reliability of the ATF forms." In other words, asserts the Defendant, there was evidence on which a rational jury could have found that the Government failed to prove beyond a reasonable doubt that the three false statements concerning Falcon's felon status, as

---

sive" in the absence of "a clearly expressed legislative intent to the contrary") (citation omitted).

**7.** Section A contains a box which requires the applicant to represent that he is not a convicted felon. Edwards, Jr. testified that his father (not he) would complete the entries in section A, although sometimes his father did not complete these entries before asking Edwards, Jr. to complete the entries in section B. He added that he usually completed the section B entries sometime

after the date of the transaction. Edwards, Jr. stated when he and/or his father completed portions of the forms "after the fact," they relied on Edwards, Sr.'s recollection or notes that the father had made on little pieces of paper.

Notably, when asked about the three Form 4473's at issue here, Edwards, Jr. could not tell and/or could not recall whether section A had been completed by his father and/or the customer before he was asked to complete section B.

well as the three instances of receipt of a firearm, in fact occurred prior to May 13, 1983.

We do not agree that this evidence creates a foundation for an instruction on the statute of limitations. First, nothing in the testimony of Edwards, Jr. or Rogers can plausibly be read to suggest that the acts alleged in counts V and VI (the misrepresentation on the application dated January 9, 1984 and the receipt of the firearm on January 13, 1984) actually took place prior to May 13, 1983, but simply were not recorded until some eight months later. Accordingly, Falcon had no basis to request a statute of limitations instruction as to counts V and VI (let alone object to the Government's "on or about" instruction). Second, while Edwards, Jr.'s testimony may be read to suggest that portions of ATF Form 4473's and other records maintained at the shop occasionally may not have been completed up to a month after the pertinent transaction, Edwards, Jr. did not testify that the application and receipt dates indicated on the various records at issue in this case inaccurately reflect the dates on which "Willie Fernandez" applied for, and received, the firearms. Nor did Edwards, Jr. state affirmatively that the pertinent entries under "Section A" of the Form 4473's at issue here were completed anytime other than contemporaneously with the application. Indeed, *no* witness testified that the forms were completed and/or the firearms received on dates other than those reflected in the Government's exhibits. *Compare United States v. Edwards*, 968 F.2d 1148, 1152–53 (11th Cir.1992) (finding reversible error in the district court refusal to give a statute of limitations instruction where "the witnesses at trial presented conflicting accounts of when the [charged] offenses occurred" and a separate indictment from another district alleged that the offenses actually took place a month prior to the date in the indictment at hand), *cert. denied*, 506 U.S. 1064, 113 S.Ct. 1006, 122 L.Ed.2d 155 (1993).

Rogers, for his part, simply testified that Falcon spent time in Fort Myers on May 19, 20 and 21, 1983. He did not testify that Falcon spent the entirety of May 19–21 in Fort Myers (a two-to-three hour drive from Miami), or that Falcon did not or could not engage in the alleged acts on May 20th. Even construing this testimony in the light most favorable to the Defendant, the fact that Falcon participated in a powerboat race in Fort Myers on the date of the acts alleged in counts II and III does not provide a foundation for his suggestion that the pertinent transactions necessarily took place at least eight days beforehand.

In addition, the most critical fact for purposes of a statute of limitations defense—date of the indictment—had not been introduced into evidence. Falcon has offered no explanation for his failure to seek admission of the indictment prior to the close of his defense (or, for that matter, the Government's rebuttal). Under these circumstances, the Court did not abuse its discretion by refusing to re-open the case in order to afford the Defendant an opportunity to move the indictment into evidence. *Cf. United States v. Murray*, 527 F.2d 401, 410 (5th Cir.1976) (finding no abuse of discretion where the district court refused to re-open a case after the parties had rested in order to permit testimony from a newly discovered witness, even though the testimony may have impeached a key Government witness). Falcon contends that "plainly [he] was not required to offer [the indictment] in evidence to merit a statute of limitations instruction" since "[t]aken to its logical extension, this argument means that this Court should not have instructed the jury on any of the charges in the indictment because the charges were not offered in evidence." Def. Reply, at 9. Falcon offers no support for this proposition.

Falcon suggests that the Court abused its discretion by not taking judicial notice of the indictment. The Court rendered this ruling, however, due to the relative untimeliness of the request and fact that the apparent suitability of information for judicial notice does not answer the question of whether the information must be presented to the jury. Rule 201 of the Federal Rules of Evidence creates a vehicle for the judicial notice of adjudicative facts. The Advisory Committee Notes to the Rule define

adjudicative facts as "the facts of the particular case ... 'which relate to the parties.'" The Rule itself explains that a court may take judicial notice of an adjudicative fact only when it is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). A court's decision to take judicial notice of a fact is nothing more than a finding that the proffering party need not undertake the burden of litigating the existence of the fact. It follows that, while the Rule permits a district court to take judicial notice "at any stage in the proceeding," and indeed, the court "shall take judicial notice if requested by a party and supplied with the necessary information" *id.* at (f), (d), a court may refuse to take judicial notice of facts that are irrelevant to the proceeding or (in certain contexts) otherwise excludable under the Federal Rules. *See, e.g., Vallot v. Central Gulf Lines, Inc.*, 641 F.2d 347, 350 (5th Cir.1981) (per curiam) (affirming district court's refusal to judicially notice information in the Federal Register because the movant failed to establish its relevance); 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5104, p. 483–84 (1977 and 1996 supp.) (same point); *see also Kowalski v. Gagne*, 914 F.2d 299, 305–06 (1st Cir.1990)

(applying Rule 403 analysis to facts judicially noticed by the district court); *United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir.1982) (affirming refusal to take judicial notice of the amount of a settlement where the information was excludable under Fed.R.Evid. 408). For the reasons stated above, the Defendant failed to persuade the Court that he had established a foundation for his claim to an instruction on the statute of limitations. Accordingly, the date of the indictment was not relevant to any matter before the jury, and judicial notice of the indictment was unwarranted. For similar reasons, Falcon had no basis to request jury interrogatories concerning the timing of the alleged transactions.[8] We conclude that the Defendant is not entitled to a new trial on this basis.

It is therefore

ORDERED AND ADJUDGED that the Defendant's "Post–Trial Motion to Dismiss Indictment and for Judgments of Acquittal or, in the Alternative, for a New Trial" is DENIED. The Defendant's "Motion to Exceed Page Limit" is GRANTED.

---

8. According to the Government, it is far from certain that the absence of a statute of limitations instruction truly impaired Falcon's defense. The principal evidence that the Falcon's gun purchases took place *at all* (let alone on the dates identified in the indictment) was contained in the ATF Form 4473's and the accompanying records from the gun shop. Although Falcon made multiple arguments at trial, at the core of his defense was a suggestion that Government's documentary evidence was wholly unreliable and the product of shoddy record-keeping at the Edwards Appliance shop. The United States therefore suggests that a rational jury could not have returned the verdict that it did without concluding that the prosecution had established the accuracy and reliability of the records beyond a reasonable doubt. If so, argues the Government, a statute of limitations instruction would have been of little moment to the defense.