[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14694
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20801-WPD-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS ROLANDO BUENO JIMENEZ,
a.k.a. El Mono,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 29, 2018)

Before WILLIAM PRYOR, JORDAN and FAY, Circuit Judges.

PER CURIAM:

Luis Jimenez, who conditionally pleaded guilty to conspiring to violate the Maritime Drug Law Enforcement Act by possessing with intent to distribute five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States, 46 U.S.C. §§ 70503(a), 70506(b), appeals the denial of his motions to dismiss his indictment. The district court denied Jimenez's motion to dismiss based on the denial of a speedy trial under the Sixth Amendment after applying the balancing test outlined in *Barker v. Wingo*, 407 U.S. 514 (1972). The district court also denied as foreclosed by precedent Jimenez's omnibus motion to dismiss that challenged the validity of the Act. We affirm.

## I. BACKGROUND

Agents of the Drug Enforcement Agency working with a cooperating source and law enforcement officers in Colombia, South America, learned that Jimenez constructed self-propelled semisubmersible submarines for the Renteria Granados organization to transport large quantities of cocaine to Central America. The international task force thrice interrupted the activities of Renteria Granados. In March 2012, an aircraft operated by the United States Marines Corps discovered a submarine used by the organization in Honduran waters and succeeded in rescuing the four man crew after they scuttled the ship, one of whom confessed that the ship was transporting cocaine from Colombia. In July 2012, members of Renteria Granados burned a submarine they had stored in a remote jungle area as they were

2

being converged on by Colombian law enforcement. Within two weeks, federal agents recorded a telephone call in which Jimenez bemoaned having "more bad luck than who knows what." In December 2012, federal agents recorded Jimenez lamenting the loss of a third submarine in Panamanian waters that its crew scuttled when trapped by agents of the United States, Costa Rica, and Panama.

On October 17, 2013, a federal grand jury indicted Jimenez and four cohorts in Renteria Granados for conspiring to engage in maritime drug trafficking between February 1 and December 31, 2013. The government moved immediately to seal the indictment to protect witnesses, to prevent flight by the defendants, and to safeguard the ongoing investigation. The district court granted the motion.

The ongoing investigation proved fruitful. With the aid of several informants and 71 wiretaps, the task force discovered that Jimenez was assisting other drug trafficking organizations to build semisubmersible submarines to transport cocaine internationally. On August 13, 2014, the task force seized a submarine that Renteria Granados constructed to transport multiple tons of cocaine from Guyana to Europe. In December 2014, federal agents learned that Renteria Granados paid Jimenez to build a submarine to replace the one seized in August.

The government declined to pursue a superseding indictment, and on March 10, 2015, it moved to unseal the indictment to apply for provisional arrest warrants to obtain the extradition of Jimenez and his codefendants from Colombia. In July

3

2015, the U.S. State Department received provisional arrest warrants and forwarded them to the Colombian government. During August 2015, federal agents met with Colombian law enforcement and naval intelligence about locating and arresting the defendants. By December 2015, the task force had located all the defendants, but the Colombian authorities postponed the arrests until after the Christmas and New Years holidays.

On January 24, 2016, agents arrested Jimenez. On February 27, 2017, Jimenez arrived in Florida and appeared for arraignment. Jimenez entered a plea of not guilty to the conspiracy charge.

On March 27, 2017, Jimenez moved to dismiss his indictment based on the denial of his right to a speedy trial. Jimenez argued that the delay preceding his arrest and initial appearance was presumptively prejudicial, that the government failed to act with due diligence, that he had promptly asserted his right to a speedy trial, and that he did not need to prove actual prejudice. The government opposed dismissal and attached to its opposition a nine-page chronology of its investigation and its collaboration with Colombian authorities.

Jimenez also filed an omnibus motion to dismiss. Jimenez argued that Congress exceeded its authority in enacting the Maritime Drug Law Enforcement Act; the Act violated his right to due process under the Fifth Amendment; and the Act violated his rights to have a jury find each element of the crime charged and to

confront the preparer of a testimonial certificate under the Sixth Amendment. Jimenez also argued that the exclusion of the Act from safety valve relief, 18 U.S.C. § 3553(f), violated his right to equal protection under the Fifth Amendment. The district court denied Jimenez's omnibus motion.

After an evidentiary hearing, the district court denied Jimenez's motion to dismiss for lack of a speedy trial. The district court determined that the first and third *Barker* factors "weigh[ed] heavily against the government" because the delay was sufficient to trigger a speedy trial inquiry and because Jimenez timely had invoked his right to a speedy trial. The district court determined that the second *Barker* factor involving the reason for the delay weighed "in favor of the government" or "only slightly against it" even though Jimenez bore no "responsibility for the delay." The district court found that delays were "appropriate to continue the investigation of the drug trafficking organization" with the Colombian government, to coordinate the arrests of "all defendants simultaneously," and to "locate[] defendants in Colombia and extradit[e] them." Because the government "unsealed the indictment as soon as the legitimate need for delay had been completed," the district court determined that the "postponement of the prosecution [was not] to gain some impermissible advantage at trial." The district court ruled that Jimenez's speedy trial claim failed because

5

the first three *Barker* factors "did not weigh heavily against the government" and he failed to prove actual prejudice.

Jimenez pleaded guilty to conspiring to engage in maritime drug trafficking, 46 U.S.C. §§ 70503(a), 70506(b), and reserved the right to appeal the denial of his motions to dismiss. He admitted that he assisted Renteria Granados in constructing submarines used to transport large quantities of cocaine from Colombia to Central America; that the submarines could store up to three tons of cocaine; and that law enforcement recorded multiple telephone conversations that implicated him in the maritime drug trafficking. The district court sentenced Jimenez to 120 months of imprisonment. *See id.* § 70506(a); 21 U.S.C. § 960(b)(1)(B).

## II. STANDARDS OF REVIEW

The denials of Jimenez's motions to dismiss involve mixed questions of fact and law. *See United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010) (speedy trial); *United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016) (Maritime Drug Law Enforcement Act). We review factual findings for clear error and will reverse only if "we are left with the definite and firm conviction that a mistake has been committed." *Villarreal*, 613 F.3d at 1349 (internal quotation marks and citation omitted). We review *de novo* the application of the law to the facts. *Id.*

### III. DISCUSSION

Jimenez contends that the district court should have dismissed his indictment. Jimenez argues that the government intentionally delayed his prosecution and, because the second *Barker* factor weighed heavily against the government, he was excused from having to prove actual prejudice to prevail on his speedy trial claim. Jimenez also argues that the Maritime Drug Law Enforcement Act is unconstitutional and that he is entitled to a reduction of his sentence under the safety valve. These arguments fail.

*A. The District Court Did Not Err in Weighing the* Barker *Factors and Denying Jimenez's Motion to Dismiss.*

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. To determine whether a delay between indictment and trial violates a defendant's right to a speedy trial, "the conduct of the Government must be weighed against the conduct of the defendant." *United States v. Carter*, 603 F.2d 1204, 1207 (5th Cir. 1979). In *Barker*, the Supreme Court instructed courts to evaluate whether a delay deprived the defendant of a speedy trial based on four factors: the length of the delay between indictment and trial, the reason for that delay, when the defendant asserted his right to a speedy trial, and whether he was prejudiced by the delay. *Barker*, 407 U.S. at 530–33. If the length of the post-indictment delay is sufficiently long to trigger consideration of the other factors, and if the reason for the delay and

7

assertion of the right to a speedy trial also "weigh heavily" against the Government, the defendant is not required to prove actual prejudice to succeed on his speedy trial claim. *United States v. Oliva*, 904 F.3d 910, 916 (11th Cir. 2018). We review the determination of the district court with respect to each factor "with considerable deference." *Doggett v. United States*, 505 U.S. 647, 652 (1992).

The weight to be accorded a delay varies with its cause. *Barker*, 407 U.S. at 531. A deliberate attempt to delay trial to hamper the defense weighs heavily against the government. *Id.* Neutral reasons for delay, such as negligence, weigh less heavily against the government. *Villareal*, 613 F.3d at 1351. But neutral reasons do "not necessarily tip the scale in favor of the defendant, particularly where [he] was at liberty and outside the jurisdiction where the indictment was returned." *United States v. Bagga*, 782 F.2d 1541, 1544 (11th Cir. 1986). A valid reason that serves a legitimate government purpose justifies reasonable delay. *See Doggett*, 505 U.S. at 656 ("pretrial delay is often both inevitable and wholly justifiable," for instance, when "[t]he government . . . need[s] time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down."). When weighing a factor "there is no hard and fast rule to apply . . ., and each case must be decided on its own facts." *United States v. Clark*, 83 F.3d 1350, 1354 (11th Cir. 1996).

8

The government does not dispute that the first and third *Barker* factors weigh heavily against it. The 40-month delay between Jimenez's indictment and his initial appearance was sufficiently lengthy to entitle him to a presumption of prejudice. *See id.* at 1352. And Jimenez's prompt assertion of his right to a speedy trial tilted in his favor. *See id.* at 1353. Because of the weight that the district court assigned to those two factors, Jimenez's right to relief turns on the second *Barker* factor—the reason for the delay.

Jimenez accuses the government of "inaction" between his indictment and initial appearance, but the district court did not clearly err in making a contrary finding. The government "establish[ed] valid reasons for the delay" in its response to Jimenez's motion and an attached nine-page report that described an ongoing international investigation that led to the search for and apprehension of Jimenez and his codefendants. *See Villarreal*, 613 F.3d at 1351. The report described the international investigation that began in December 2012 and continued after the government unsealed Jimenez's indictment. Pages 3 through 6 of the report catalogue—from Jimenez's indictment on October 17, 2013, through mid-December 2014—the use of informants and wiretaps to collect information about Jimenez's work with Renteria Granados and other drug trafficking organizations and their affiliations with paramilitary commanders, financiers, and cocaine

9

suppliers; the seizure of a submarine constructed to transport multiple tons of cocaine; and the discovery of a plot for Jimenez to construct another submarine.

It is undisputed that the investigation ended when the government declined to pursue a superseding indictment, yet that decision dovetailed with the motion of the government to unseal the indictment. Page 6 of the report reflects that federal agents met with confidential sources during December 2014 and obtained permission on January 15, 2015, to tap a cellular telephone in Colombia for 180 days. That wiretap overlapped with the filing on March 10, 2015, of the motion to unseal Jimenez's indictment to apply for provisional arrest warrants.

The record supports the finding that the government was actively involved in Jimenez's case until his initial appearance. As stated on page 7 of the report, on July 9, 2015, the State Department received provisional arrest warrants and forwarded them to the Colombian government on July 23, 2015. Pages 7 and 8 of the report describes meetings between federal agents and Colombian authorities during August 2015 to locate and arrest the defendants and to collect additional intelligence. The government stated on page 15 of its response that the "[t]he last defendant [was] located . . . around December 2015" and that Colombian authorities "delayed the arrests until the end of January 2016." Jimenez was arrested on January 24, 2016, his arrest warrant states that he was extradited to the

10

United States in February 2017, and the docket sheet reflects that he appeared for arraignment on February 27, 2017.

The government had, at a minimum, neutral reasons for its delay. The district court identified three activities that delayed Jimenez's prosecution: the "ongoing investigation," the "coordination of [the defendants'] arrests," and "the logistics of locating defendants in Colombia and extraditing them." We readily dispose of the latter two activities based on our precedents holding that delays attributable to seeking the assistance of a foreign government and to marshaling codefendants for trial weigh minimally against the government. In *United States v. Hayes*, 40 F.3d 362 (11th Cir. 1994), we held that the government had a valid reason for sealing the indictment and delaying the defendant's trial for almost five years while working with the United Kingdom and the government of Zimbabwe to locate, arrest, and extradite a codefendant who might have "frustrated . . . attempts to secure his arrest and deportation if he [had been] aware of [the indictment]." *Id.* at 365–66. And in *United States v. Davenport*, 935 F.2d 1223, 1239–40 (11th Cir. 1991), we held that a delay of almost two years "inherent to the government's good faith effort to conduct a complex . . . trial involving nineteen codefendants" in a manner consistent with this Circuit's "judicial policy favoring joint trials" in conspiracy cases provided "at worst, neutral reasons" for the delay. *Id.* at 1239–40. The delays owing to the collaboration with Colombian authorities

11

to coordinate the defendants' arrests and to extradite the defendants "will not be held against the Government." *See Hayes*, 40 F.3d at 366.

The district court did not err in classifying the ongoing international investigation, at worst, as a neutral reason that weighed "only slightly against" the government. As the Supreme Court stated when addressing whether an investigation that contributes to preindictment delay violates the Due Process Clause of the Fifth Amendment, "investigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused, precisely because investigative delay is not so one-sided." *United States v. Lovasco*, 431 U.S. 783, 795 (1977) (internal quotation marks and citation omitted). Investigative delay can involve "fully exploit[ing] . . . potentially fruitful sources of information," *id.* at 792, and protecting those informants, *see id.* at 796 n.19, and those matters may be "beyond the control of the prosecuting authorities." *Id.* The government had to balance its "duty to make a diligent, good faith effort to bring an indicted defendant to trial promptly," *Hayes*, 40 F.3d at 365, with its needs to discover the full scope of drug trafficking by Jimenez and his cohorts, to protect informants, and to assist Colombian authorities with their investigation. As the district court stated, the government sensibly "decided [not] to jeopardize [its] investigations and relations with Colombia by unsealing the indictment earlier." While Jimenez's indictment was sealed, the task force amassed evidence of

12

international drug trafficking and interrupted those illegal activities. Because the government postponed action for the investigation, and "[t]here is absolutely no evidence of bad faith by the government," *Davenport*, 935 F.2d at 1240, the delay attributable to the investigation counts marginally against the government.

The district court did not err by denying Jimenez's motion to dismiss for lack of a speedy trial. The Supreme Court "has consistently been of the view that '[t]he right of a speedy trial is necessarily relative.'" *United States v. Ewell*, 383 U.S. 116, 120 (1966) (quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)). "It secures rights to a defendant" while guarding "the rights of public justice." *Id.* (quoting *Beavers*). The government provided compelling reasons for its delay: to protect the maritime drug trafficking investigation and its informants, to preserve amity with Colombian authorities, and to arrest and extradite Jimenez and his codefendants. Jimenez offered no evidence that the government delayed prosecution to prejudice him or to gain a tactical advantage for itself. *See Barker*, 407 U.S. at 531. Although the first and third *Barker* factors—the length of the delay and Jimenez's prompt assertion of his right to a speedy trial—weigh heavily against the government, the second factor—the reasons for the delay—weighs "only slightly against it." When "the reasons for the delay do not weigh heavily against the government [, the defendant is] . . . not excuse[d] from . . . showing . . . actual prejudice." *Davenport*, 935 F.2d at 1240. Jimenez never alleged that he was

prejudiced by the delay. A balancing of the *Barker* factors establishes that the government did not deprive Jimenez of his right to a speedy trial.

### B. The District Court Also Did Not Err by Denying Jimenez's Omnibus Motion to Dismiss.

Jimenez argues that his conviction under the Maritime Drug Law Enforcement Act is unconstitutional in four ways. He also argues that his ineligibility for relief from a mandatory minimum sentence under the safety valve, 18 U.S.C. § 3553(f), violates his constitutional right to equal protection of the law under the Fifth Amendment.

Our precedents foreclose Jimenez's four challenges to his conviction for violating the Act. First, Jimenez argues that the power of Congress to punish maritime felonies does not extend to drug trafficking offenses that lack a nexus to the United States, but "we have repeatedly held that Congress has the power, under the Felonies Clause, to proscribe drug trafficking on the high seas," *United States v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014); *see Cruickshank*, 837 F.3d at 1188. Second, Jimenez argues that the district court violated the Due Process Clause of the Fifth Amendment by exercising jurisdiction over his offense without proof of a domestic nexus, but in *Campbell* we held that "the conduct proscribed by the Act need not have a nexus to the United States because universal and protective principles support its extraterritorial reach," 743 F.3d at 810. Third, Jimenez argues that the Act violates his right to due process under the Fifth

14

Amendment and his right to a jury trial under the Sixth Amendment because it removes the factual basis of the jurisdictional requirement from a jury's consideration, but the Court in *Campbell* also held that the Fifth and Sixth Amendments do not require a jury to determine whether extraterritorial jurisdiction exists under the Maritime Act, 743 F.3d at 809. Fourth, Jimenez argues that the acceptance by the district court of a certificate from the Secretary of State as conclusive proof of jurisdiction under the Act violates his right of confrontation under the Sixth Amendment, but we explained in *Cruickshank* that a "certification of jurisdiction under the [Act] does not implicate the Confrontation Clause because it does not affect the guilt or innocence of a defendant," 837 F.3d at 1191.

Our recent decision in *United States v. Castillo*, 899 F.3d 1208 (11th Cir. 2018), also forecloses Jimenez's challenge to his sentence. In *Castillo*, we held that "international concerns" provided Congress a rational basis to "mete out [more] hefty sentences to maritime drug runners" than to their domestic counterparts. *Id.* at 1213. We concluded that "Congress has legitimate reasons to craft strict sentences for violations of the Act" because, "[i]n contrast with domestic drug offenses, "international drug trafficking raises pressing concerns about foreign relations and global obligations," as evidenced by our commitment by treaty to thwart maritime drug trafficking, and because the more severe penalty for maritime trafficking could "deter would-be offenders." *Id.*

15

## IV. CONCLUSION

We **AFFIRM** Jimenez's conviction and sentence.